Alton F. Lounsbury and Lorraine M. Lounsbury, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 82244.    Filed October 31, 1961.

*Frank E. Magee, Esq.*, and *Jack H. Dunn, Esq.*, for the petitioners.
*Walter I. Auran, Esq.*, for the respondent.

Scott, *Judge:* Respondent determined deficiencies in petitioners' income tax in the amounts of $543.85, $604.48, and $681.14 for the years 1954, 1955, and 1956, respectively. Petitioners claim that they are entitled to refund of income tax paid in the amounts of $156, $1,583.60, and $187.20 for the same respective years. The only issue remaining for decision is whether payments of $250 per month made by the husband petitioner to his former wife and payments made toward the purchase of a home for her constitute deductible alimony payments.

FINDINGS OF FACT.

The petitioners, husband and wife residing at Coquille, Oregon, filed joint Federal income tax returns for the taxable years 1954, 1955,

and 1956 with the district director of internal revenue at Portland, Oregon.

Petitioners were married in 1952. Alton F. Lounsbury (hereinafter referred to as petitioner) was married to Besse V. Lounsbury (now Besse V. Cornish, hereinafter referred to as Besse) from 1927 to December 1950 when their marriage was dissolved by divorce.

While the divorce proceeding was pending, petitioner met with Ray B. Compton, an attorney representing Besse, to work out a financial arrangement between the parties. At this conference petitioner advised Compton that he was willing to contribute $250 per month to support Besse, to pay an amount monthly equal to the rent on the house in which Besse was then living, and within 2 years to furnish Besse with a house worth $10,000. At no time during these negotiations was petitioner requested by Compton to submit a balance sheet or other financial statement, nor had petitioner previously discussed the matter of support or property settlement with Besse.

Compton conveyed this offer to Besse, found it acceptable to her and drew up an agreement entitled "Property Settlement Agreement." It was Compton's practice to label predivorce agreements as "Property Settlement Agreements" irrespective of the fact that in any particular case the agreement might basically provide only for future support payments. Petitioner did not instruct Compton concerning the type of instrument to be used in reflecting the division of property, nor did he question the terminology of the agreement as finally prepared.

The agreement dated October 24, 1950, which was signed by petitioner and Besse, provided in part as follows:

WHEREAS the parties hereto desire to settle all property rights between them and further insofar as they legally may to provide for the future of their three minor children, now, therefore,

* * * * * * *

That in full and complete settlement of all and every property right between them, it is agreed:

1. Party of the second part will pay to party of the first part the sum of Two Hundred Fifty and no/100 Dollars ($250.00) per month commencing on the 25th day of October, 1950, and regularly on or before the 25th day of each and every month thereafter to and including the 25th day of September, 1955, which sum is in full of all support money for the party of the first part and all support money for their minor children or such of them as may be from time to time minor during the whole of said period. It is understood and agreed that while said sum shall be entered in any decree of divorce between the parties hereto that it is a personal promise from the party of the second part to party of the first part and without regard to modification of divorce decree is a definite sum due and payable monthly.

2. On or after September 25, 1955, and commencing with the 25th day of October, 1955, party of the second part will pay to party of the first part such sum as the Circuit Court of the State of Oregon for the County of Douglas shall, by modification of decree at such time, find to be proper for the support of minor children.

* * * * * * *

4. Party of the second part will pay all rentals upon the home now occupied by party of the first part at 501 Overlook, or in the event that party of the first part can not continue as a tenant in said house, then party of the second part will pay rent upon a house of equivalent style, character and value, paying said sums regularly until paragraph 5 hereof shall have been fully complied with.

5. Party of the second part agrees on or before two years from date hereof to deliver to party of the first part possession of and fee simple title to a home in the City of Roseburg suitable to party of the first part of the value of not less than $10,000.00 or in lieu thereof on or before two years to pay to party of the first part the sum of $10,000.00.

6. Party of the second part agrees to and with party of the first part upon new 1951 model Ford, Chevrolet or Plymouth automobiles being available as may be selected by party of the first part, to deliver to party of the first part, fully paid for, a new 1951 2-door or 4-door sedan of the make to be chosen by the party of the first part within the range above specified, on condition that party of the first part will deliver for partial payment thereon the present 1947 Ford automobile now standing in the name of party of the second part, and it is understood and agreed that until 1951 automobiles shall be available that party of the first part shall be entitled to the use and possession of said 1947 Ford automobile.

7. Save and excepting for one typewriter, one filing cabinet, one organ, one radio now in the room used by the party of the second part, and further save and excepting all other purely personal effects, party of the second part does hereby transfer to party of the first part all and every right, title and interest in and to all other furniture, furnishings and equipment heretofore used by the parties in the home at the address above particularly specified.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

9. All moneys now standing on deposit in any banking institution in the name of each of the parties hereto shall be and remain the individual property of the party in whose name said deposits now stand.

The parties hereto agree to substitute the rights, duties and obligations of this instrument for all and every right or obligation of the one against the other to the date hereof and each party releases the other from all other or different rights for support or otherwise, save and excepting as the same are expressly herein written.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

The parties hereto being both much attached to their three minor children, Bernice, aged 18, Judy, aged 13, and Dean, aged 11, and desiring to provide as best they may for their welfare, and with the welfare of said children in mind, it is agreed that their care and custody shall be awarded to the party of the first part and each of the parties hereto does represent to any court having jurisdiction to award the custody of said children that it is for the best interests of said children that their care and custody be awarded to party of the first part, subject to reasonable visitation to said children by party of the second part and on the part of said children to him.

At the time this agreement was entered into petitioner was an automobile salesman with Lockwood Motors in Roseburg, Oregon. The only property owned by petitioner other than that mentioned in the agreement was an equity in a partnership which operated a sawmill. Petitioner's capital investment in this partnership was between $15,000 and $16,000 with $4,000 having been borrowed. The sawmill operated at a loss in 1950 of between $10,000 and $15,000, and due to the poor condition of the lumber market the market value of peti-

tioner's partnership interest was less than $3,000. Subsequently the sawmill operated at a profit and in January or February 1953 was sold for $100,000, petitioner receiving $50,000. The rather rapid increase in the market value of the sawmill was due to an increase in the demand for lumber, and, hence, demand for sawmills, and also to the fact that the partnership was able to reduce some of the debt standing against the mill assets.

At the time of Besse's marriage to petitioner she did not own any property, nor did she acquire any property by inheritance or gift during the period of said marriage. Petitioner did not owe Besse any amount of money at the time of divorce.

Decree No. 13649 entered in the Circuit Court of the State of Oregon, in and for Douglas County, granting Besse a divorce from petitioner provides in part as follows:

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the care, custody and control of the minor children of the parties, Bernice L. Lounsbury, Judith L. Lounsbury and Alton Dean Lounsbury, be and the same hereby is awarded to the plaintiff, subject to reasonable visitation on the part of said children to the defendant and on the part of the defendant to said children.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that defendant pay to the plaintiff, through the Clerk of this Court, as alimony and as support money and under the terms of property settlement heretofore entered into, the sum of $250.00 per month commencing with the 25th day of December, 1950, to and including the 25th day of September, 1955.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that support money for child or children after September 25, 1955, shall be subject to the further order of this court upon modification of this decree.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that plaintiff is the owner of all furniture and furnishings heretofore used by the parties in a home at 501 Overlook Street, Roseburg, Oregon, save and excepting one typewriter, one filing cabinet, one organ and one radio and the purely personal effects of the defendant contained in the house on said premises.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that in addition to the alimony and support money hereinbefore decreed to the plaintiff, that defendant shall pay to the plaintiff the sum equal to the rental upon the home of the parties at 501 Overlook Street, Roseburg, Oregon, or other house of similar and equivalent style, character and value, until the provisions of the next succeeding paragraph of this decree shall have been complied with.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that on or before October 25, 1952, defendant shall pay to the plaintiff, through the Clerk of this Court, as and for alimony the sum of $10,000.00, or in lieu thereof shall submit evidence satisfactory to this court that defendant has delivered to the plaintiff possession of and fee simple title to a home in the City of Roseburg suitable to plaintiff and the children of the parties, of a value of not less than $10,000.00.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that any and all moneys on deposit in any banking institution standing in the individual name of either party hereto shall be and the same hereby are the individual property of such party.

On October 25, 1952, petitioner was unable to provide the $10,000 payment or a house of equivalent value in lieu thereof as required by

both the predivorce agreement and the divorce decree. On February 21, 1953, petitioner and Besse entered into an agreement extending for 2 years "the time in which to build a home in Roseburg as specified in the Divorce Decree." In consideration therefor petitioner agreed to trade in Besse's presently owned 1950 automobile for a new automobile sometime during 1953 or 1954.[1]

Petitioner furnished Besse with an automobile as required by the extension agreement of February 21, 1953, at a cost to him of $736.92. Petitioner did not receive credit for the $736.92 amount upon his $10,000 obligation to Besse as set forth in the predivorce agreement and the divorce decree.

On or before June 21, 1955, Besse notified petitioner she had found a house that she wanted. Besse entered into an agreement to purchase the property.

At about the same time, on June 21, 1955, petitioner and Besse entered into an agreement which recited the facts that the divorce decree had directed petitioner to pay Besse the sum of $10,000, "as and for alimony," by October 25, 1952, or in lieu thereof petitioner was to furnish a home in the city of Roseburg suitable to Besse and the children worth not less than $10,000, and that petitioner had failed to satisfy that provision of the divorce decree. The agreement stated that Besse was then purchasing certain property for $10,000, paying $3,714.61 as a downpayment and assuming a $6,285.39 mortgage with interest at 4¼ percent on the unpaid balance after June 1, 1955, and that petitioner had provided the $3,714.61 downpayment for which petitioner was to receive credit in that amount "against the aforementioned $10,000 alimony payment." The agreement obligated petitioner to pay to the mortgage holder the sum of $6,285.39, together with interest on all deferred balances thereof at 4¼ percent from June 1, 1955. The agreement further provided in part as follows:

2. IT IS EXPRESSLY UNDERSTOOD AND AGREED by and between said parties that Alton's obligations under the December 9, 1950 decree with respect to the provision thereof as referred to in Recital paragraph A above shall continue to remain outstanding and an obligation against him until he has fully performed under this immediate agreement, the obligations of Alton under said provision of said divorce decree being reduced only in proportion to which he performs hereunder; and, further, said parties UNDERSTAND AND AGREE that Alton's obligations hereunder and under the aforementioned portion of said decree shall constitute and be an obligation of his estate in the event he dies prior to fully performing hereunder.

The agreement of June 21, 1955, was drawn by George Luoma, an attorney representing Besse. Petitioner did not authorize Luoma to

---

[1] Apparently petitioner never furnished Besse with a 1951 automobile as provided by paragraph 6 of the predivorce agreement, but instead furnished her with a 1950 one.

bind his estate with respect to his obligation under the June 21, 1955, agreement.

The extension agreement dated February 21, 1953, and the agreement of June 21, 1955, were not ratified or approved by the court which granted the divorce, nor by any other court.

In August 1956, Besse remarried. Since Besse's marriage, petitioner has continued to make the mortgage payments pursuant to the June 21, 1955, agreement.

During the taxable years, petitioner made the following payments to Besse in the amounts indicated:

|  | 1954 | 1955 | 1956 |
|---|---|---|---|
| Monthly payments of $250 | $3,000 | $2,500.00 | |
| Monthly rental payments of $75 | 900 | 450.00 | |
| Downpayment and closing costs (per agreement of June 21, 1955) | | 3,738.11 | |
| Monthly mortgage payments of $77 (per agreement of June 21, 1955) | | 462.00 | $924 |

In their income tax returns for the years 1954 and 1955, petitioners claimed as deductions for alimony the monthly payments of $250 and the monthly rental payments of $75. Respondent disallowed the claimed deduction for the monthly payments of $250 but allowed deduction for the $75 rental payments.

In their petition, petitioners claim additional deductions for alimony payments in the amounts of $4,200.11 for 1955, consisting of the $3,738.11 downpayment plus closing costs on the house and 6 monthly mortgage payments of $77 each totaling $462, and $924 for 1956, consisting of 12 monthly mortgage payments of $77 each.

Other issues raised in the petition have been settled by the parties.

Some of the facts have been stipulated and are found accordingly.

### OPINION.

During the taxable years here involved petitioner made $250 monthly payments throughout 1954 and until October 1955, and $75 monthly rental payments also throughout 1954 and until June 1955, to his former wife, Besse, pursuant to the terms of a divorce decree granted December 9, 1950, which decree incorporated similar terms of a predivorce agreement entered into on October 24, 1950. Petitioner also made a $3,738.11 payment on a house, including $23.50 closing costs, for Besse in June 1955 and $77 monthly mortgage payments thereafter during the balance of 1955 and all of 1956 pursuant to the terms of an agreement dated June 21, 1955, whereby petitioner and Besse settled petitioner's obligation contained in the divorce decree of paying Besse $10,000 cash or providing her with a home worth not less than $10,000.

Petitioner contends that all the above-mentioned payments qualify as periodic payments under the provisions of section 71 of the Internal

Revenue Code of 1954 [2] and hence are deductible under section 215 of the Internal Revenue Code of 1954.[3] Petitioner's position is that all the instant payments were, in effect, alimony payments, that under the applicable local law alimony payments are subject to change by the courts and are terminable upon the wife's remarriage or death, and that these contingencies arising by local law suffice to make the payments indefinite, and, therefore, periodic within the provisions of section 71.

Respondent does not question the deduction for the $75 monthly rental payments made by petitioner during 1954 and 1955, but contends that the $250 monthly payments made during 1954 and 1955, the $3,738.11 payment with respect to the house in 1955, and the $77 monthly mortgage payments made thereafter during 1955 and throughout 1956 are nondeductible installment payments under the provisions of section 71. Respondent further argues that the payments made by petitioner in discharge of his obligation to provide Besse with a house are in the nature of a division of capital and not properly classifiable as periodic alimony payments under section 71 of the Internal Revenue Code of 1954.

The $250 monthly payments were made in accordance with the divorce decree granted in 1950, which directed that the payments be made from December 1950 through September 1955 as alimony and as support money under the terms of the predivorce agreement theretofore entered into between petitioner and Besse. The predivorce agreement provided for the same monthly payments over essentially the

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
(a) GENERAL RULE.
(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.
     *      *      *      *      *      *      *
(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—
(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.
(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
[3] SEC. 215. ALIMONY, ETC., PAYMENTS.
(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

same time period, stating that the monthly amounts were payments in full of all support money for Besse and the children. The predivorce agreement further provided with respect to the $250 monthly payments that "It is understood and agreed that while said sum shall be entered in any decree of divorce between the parties hereto that it is a personal promise from the party of the second part to party of the first part and without regard to modification of divorce decree, is a definite sum due and payable monthly."

Agreements whereby parties contemplating divorce settle their respective rights and duties arising out of the marital relationship often contain provisions both for property settlement and for alimony which may be broken down into their component parts and treated separately both for the purpose of Federal taxes, *Edward Bartsch*, 18 T.C. 65, affirmed per curiam 203 F. 2d 715 (C.A. 2, 1952), and for questions arising under local law. *Briggs* v. *Briggs*, 178 Ore. 193, 165 P. 2d 772 (1946) ; *Prime* v. *Prime*, 172 Ore. 34, 139 P. 2d 550 (1943) ; *Warrington* v. *Warrington*, 160 Ore. 77, 83 P. 2d 479 (1938) ; *Phy* v. *Phy*, 116 Ore. 31, 236 Pac. 751, rehearing denied 240 Pac. 237 (1925).

These Oregon cases hold that provisions for support payments of a spouse or children set out in a divorce decree constitute alimony, any portion of which has not become due being subject to modification by the court by reason of changed circumstances, such as death of either party, remarriage of wife, or changed economic circumstances of either party, notwithstanding the fact that the parties have between themselves contracted to make such alimony provisions permanent.

The evidence here shows that there was very little property to be divided between the parties and that what property there was, was effectively divided in both the predivorce agreement and the divorce decree in paragraphs separate from the provision of the $250 monthly payments. The predivorce agreement provided that the $250 payments were "in full of all support money for" Besse and the children. The divorce decree referred to the $250 payments as being "as alimony and as support money." Petitioner testified that his offer to pay Besse $250 monthly was based on an intent to provide support for her. This view was substantiated by Compton, a lawyer representing Besse, who conferred with petitioner and who drew up the predivorce agreement.

The $250 monthly payments, being treated as alimony under Oregon law subject to modification by the State courts upon changed circumstances, are indefinite as to the amount of payment and under our recent decision in *Helen Stewart Cramer*, 36 T.C. 1136 (1961), constitute periodic payments within the provisions of section 71 of the Internal Revenue Code of 1954.

A different factual situation exists with respect to petitioner's payments toward the purchase of a house for Besse. The divorce decree

directed that the house or $10,000 cash be furnished to Besse by October 25, 1952. This provision was not complied with. The rule in Oregon is that the State court may change any alimony decree as to amounts not accrued at the time a motion is made for the change, but that the courts have no power to alter amounts decreed as alimony which have accrued prior to such motion. (Ore. Rev. Stat. sec. 107.130.) *Shelley* v. *Shelley*, 204 Ore. 436, 283 P. 2d 663 (1955), and the cases cited therein.

On October 25, 1952, petitioner's duty to furnish Besse with a house or $10,000 cash accrued under the terms of the divorce decree, and would not be changeable thereafter by the State court by reason of it being alimony which might otherwise be subject to modification. Since the divorce decree obligated petitioner to pay a fixed sum in terms of money which could not be modified after October 25, 1952, the agreement of June 21, 1955, whereby petitioner and Besse settled petitioner's obligation under the divorce decree was likewise not subject to modification.

The payments made pursuant to the terms of the 1955 agreement were clearly installment payments upon a fixed sum due and owing. No argument has been made that these installment payments would extend more than 10 years beyond the date of the 1955 agreement so as to qualify under section 71(c)(2) of the Internal Revenue Code of 1954, and the evidence indicates that such was not the case. The fact that the payments under the 1955 agreement might extend more than 10 years beyond the date of the original divorce decree in 1950 is not controlling. It is the 1955 agreement that governs the deductibility of the payments made pursuant to it. *Frank J. Loverin*, 10 T.C. 406 (1948). Therefore, whether we consider the 1955 agreement as a written instrument incident to a divorce or separation under section 71(a)(1) of the Internal Revenue Code of 1954 or as a written separation agreement under section 71(a)(2),[4] the 10-year period is measured from the date of such agreement and not from the date of the original decree.

We hold that petitioner is entitled to deduct in computing his taxable income the total amount of the monthly payments of $250 each made to his former wife in 1954 and 1955, but is not entitled to deduct any of the payments made under the agreement of June 21, 1955, in discharge of his obligation to furnish her with a house.

*Decision will be entered under Rule 50.*

---

[4] Sec. 71(a)(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.