Paul Shawhan v. Commissioner.
Shawhan v. Commissioner
Docket No. 89504.
United States Tax Court
T.C. Memo 1963-23; 1963 Tax Ct. Memo LEXIS 320; 22 T.C.M. (CCH) 86; T.C.M. (RIA) 63023; January 28, 1963
Charles W. Slicer, Esq., 734 Third National Bldg., Dayton, Ohio, and Irvin H. Harlament, Esq., for the petitioner. Henry T. Nicholas, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1955, 1956, and 1957 in the amounts of $95,214.24, $4,518.13, and $57,944.38, respectively, and additions to the tax under section 6653(b) of the Internal Revenue Code of 1954 for these years in the respective amounts of $47,607.12, $2,259.07, and $28,972.19. The only issue for decision is whether petitioner is entitled to the deduction claimed in each of the years 1955, 1956, and 1957 for alimony payments. All of the other issues raised by the pleadings have been disposed of either by concession of petitioner or respondent or by agreements of the parties. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual who filed his Federal income tax returns for the taxable years 1955, 1956, and 1957 with the district director of internal revenue *322 at Cincinnati, Ohio. On October 20, 1954, petitioner and Erma G. Shawhan (hereinafter referred to as Erma) were husband and wife. On that date they executed a separation agreement which provided that Erma receive the household goods, title to the residence subject to a $10,000 mortgage and retain her automobile, and that petitioner pay Erma's outstanding charges up to the date of the agreement not to exceed $300 and pay the fees of the attorney representing her in the proceedings, and further provided as follows: FOUR: The husband shall pay the wife the sum of $50.00 per week beginning Saturday, October 9, 1954, and each week thereafter for a period of three (3) years and she shall pay all of her living expenses and her utility expenses; * * *
NINE: The husband also agrees to carry and continue payments on a $10,000.00 life insurance policy which he now carries with his wife as beneficiary to protect her on the weekly $50.00 payments until the three year period expires; TEN: It is further agreed and understood between the parties herein that the settlement hereinbefore made together with other considerations is in full of all temporary and permanent alimony, attorney fees, *323 rights of inheritance, right to live in the mansion house for one year, dower, the right to a distributive share of 20% in each others estate of whatsoever kind or nature including years allowance, it being distinctly understood that the settlement herein made is a full and complete release of one against the other of all rights of every kind and nature growing out of their marital relationship; It is further agreed between the parties herein that the settlement herein made is made after there has been a full disclosure of all assets owned by either party herein at this time. On February 11, 1955, [1] the Common Pleas Court of Montgomery County, Ohio, entered its decree granting petitioner and Erma a divorce. This divorce decree adopted the terms of the separation agreement and had a copy of that agreement attached to it. On September 23, 1959, the Common Pleas Court of Montgomery County, Ohio entered the following Nunc Pro Tunc order It appearing to the Court that on February 11, 1956, a Final Divorce Decree was filed *324 in this case and that under Item Four of the Separation Agreement, approved by the Court, it is stipulated that "the husband shall pay the wife the sum of $50.00 per week beginning Saturday, October 9, 1954 and each week thereafter for a period of three years and she shall pay all of her living expenses and her utility expenses" that this $50.00 per week payment for the period of three years from October 9, 1954, was intended as permanent alimony paid by the husband for the support of the wife; It is hereby ordered that the Final Decree of Divorce filed February 11, 1956, be amended and clarified and filed as of said date and was for permanent alimony from the husband to the wife as therein written. Pursuant to the terms of the separation agreement and divorce decree, petitioner paid to Erma $50 per week throughout the years 1955 and 1956 and during the first 41 weeks of 1957, the total amount of these payments being $2,600 for each of the years 1955 and 1956, and $2,050 for the year 1957. Erma filed income tax returns for the calendar years 1955, 1956, and 1957, with the district director of internal revenue at Cincinnati, Ohio and included therein as taxable income the amount *325 of $2,600 for each of the years 1955 and 1956 and the amount of $2,050 for the year 1957 marked "Paul E. Shawhan - Alinnony." In the negotiation of the separation agreement and the ensuing divorce proceedings, petitioner was not represented by counsel. Erma was represented by an attorney who handled the negotiations for the separation agreement on her behalf, prepared the separation agreement, and handled the ensuing divorce proceedings on her behalf. At the time of the separation Erma was unemployed. Petitioner and Erma had no children. Erma's attorney advised her that she should receive payments to provide for her living expenses for a period of time, as was his custom in advising clients situated similarly to Erma. Petitioner on his income tax returns for each of the years 1955 and 1956 deducted $2,600 as alimony payments to Erma and in the year 1957 deducted $2,050 as such alimony payments. Respondent in his notice of deficiency disallowed these claimed deductions with the explanation that such amounts were not allowable within the provisions of section 215 of the Internal Revenue Code of 1954. Opinion The issue here involved is whether the payments *326 of $50 per week by petitioner to Erma during the years 1955, 1956, and 1957 are deductible by him under the provisions of section 215 of the Internal Revenue Code of 1954. [2] Under section 215 the payments are deductible by petitioner (the husband) if they are includable in the income of Erma (the wife) under the provisions of section 71. Section 71(a)(1) provides that if a wife is divorced or legally separated from her husband under a decree of divorce or separate maintenance, the wife's gross income includes periodic payments received after such decree in discharge of a legal obligation which because of the marital or family relationship is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. Section 71(c)(1) provides that for the purpose of section 71(a) installment payments discharging a part of an obligation, the principal sum of which is either in terms of money or property specified in the decree or agreement shall not be treated as periodic payments. n3 *327 Petitioner contends that the payments here involved are periodic payments under section 71(a) irrespective of the fact that they were to continue for a stated period of time since they were made for the support of Erma. He, therefore, contends that section 71(c)(1) has no application to the instant case. Where a divorce decree provides for payments in a specified amount for a specified period of time thus permitting the principal sum to be paid to be arrived at by a simple mathematical computation, such provision has been interpreted to constitute an obligation, the principal sum of which is in terms of property or money specified in the decree. Frank R. Casey, 12 T.C. 224 (1949). However, if there exists any contingency under the agreement or under local law, the occurrence of which would relieve the husband or his estate from the obligation to make the payments for the entire period, the principal sum of the obligation is not specified since the amount thereof would be reduced by the occurrence of the contingency. Helen Stewart Cramer, 36 T.C. 1136 (1961), and Alton F. Lounsbury, 37 T.C. 163 (1961), on appeal (C.A. 9, Apr. 2, 1962). In *328 the instant case, since the $50 per week payments were to be made for a period of 3 years, the total amount of such payments is specified in the agreement, and the payments fall under the designation of installment payments as set forth in section 71(c)(1) unless under the provisions of the agreement or the Ohio law some contingency exists which could cause the requirement to make the payments to terminate before the expiration of the 3-year period. In cases involving agreements similar to the one involved in the instant case, which make no provision for change in the amount of the payments because of change in the economic condition of either party, the contingencies which have been considered in determining whether the obligation to make the payments existed in all events have generally been the death or remarriage of the wife or the death of the husband, and the existence of any one of these three has been held sufficient to cause the amount not to be a specified amount payable in all events. Smith's Estate v. Commissioner, 208 F. 2d 349, 353 (C.A. 3, 1953). The Commissioner's regulations have adopted this view and provide that the contingencies may either be set *329 forth in the agreement or imposed by local law. [4]
*330 It is clear under Ohio law, as pointed out in Ellert v. Commissioner, - F. 2d - (C.A. 6, Dec. 19, 1962), affirming a Memorandum Opinion of this Court, that payments for a fixed period of time in a separation agreement may be enforced against the former husband after the remarriage of the wife where this is the intent of the agreement. Cf. Dailey v. Dailey, 171 Ohio St. 133, 167 N.E. 2e 906 (1960), quoted in part in Ellert v. Commissioner, supra. Petitioner in the instant case does not argue that the $50 per week payments provided for in the agreement here involved would cease because of the death or remarriage of Erma. He does, however, contend that under the agreement as interpreted under Ohio law, his death would have terminated the obligation and the payments would not have had to be continued by his estate for the 3-year period. It is settled under Ohio law that the parties in a divorce proceeding are competent to contract with respect to such changes in property rights as are to result from severance of the former relationship and their contract, if approved by the Court, may be carried into a decree thus becoming a perpetual obligation. It is also established *331 that the parties to a separation agreement can lawfully enter into a contract whereby the estate of the divorced husband who dies prior to his divorced wife is legally bound to make continuing payments of support. Billow v. Billow, 97 Ohio App. 277, 125 N.E. 2d 558 (1953). A written contract for support made in a separation agreement is to be construed under Ohio law as are other written contracts to give effect to the intention of the parties determined from the language used, giving words their ordinary meaning and giving consideration to the agreement in its entirety. Billow v. Billow, supra. Cf. Desjardins v. Desjardins, 193 F. Eupp. 210 (E.D. Ky., 1961). In Ellert v. Commissioner, supra, the Circuit Court in considering an agreement similar to the agreement involved in the instant case, stated: The petitioner also asserts that, since under paragraph 7 of the separation agreement he was required to pay the premiums and continue his former wife as the beneficiary of the $22,500 life insurance policies until the end of September 1964, the time when payments under paragraph 4 will terminate, the parties intended that his liability under paragraph 4 *332 was to cease upon his death. Both parties were represented by counsel. We may not rewrite this carefully drafted agreement by implying that the obligation under paragraph 4 would terminate upon the petitioner's death. While petitioner here was not represented by counsel in the drafting of the separation agreement, the wording of the agreement indicates that the insurance policy therein provided for was to protect Erma on the $50 weekly payments for the 3-year period and not that it was to substitute for such payments in the event petitioner died during the 3-year period. At the trial petitioner, Erma, and the lawyer who drafted the agreement each testified without referring to any circumstances surrounding the negotiation of the agreement which would imply that the $50 weekly payments were to terminate upon petitioner's death. [5] The record here contains no more justification for concluding that the $50 weekly payments to Erma would terminate upon petitioner's death than do the facts set forth in the opinion in Ellert v. Commissioner, supra. We sustain respondent in his disallowance of the deduction claimed by petitioner for alimony payments to Erma. *333 Decision will be entered under Rule 50. Footnotes
1. The stipulation states this date as October 11, 1955, but the copy of the decree attached to the stipulation shows this date to be February 11, 1955.↩
2. Unless otherwise designated, all references to Code sections hereinafter are to the Internal Revenue Code of 1954. n3 Sec. 71(c)(2) excepts from this provision installment payments where the period for payment is more than 10 years but this exception is not in issue in this case.↩
4. Income Tax Regs., Sec. 1.71-1(d)
Periodic and installment payments. (1) In general, installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement are not considered "periodic payments" and therefore are not to be included under section 71(a) in the wife's income. (2) An exception to the general rule stated in subparagraph (1) of this paragraph is provided, however, in cases where such principal sum, by the terms of the decree, instrument, or agreement, may be or is to be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement. In such cases, the installment payment is considered a periodic payment for the purposes of section 71 (a) but only to the extent that the installment payment, or sum of the installment payments, received during the wife's taxable year does not exceed 10 percent of the principal sum. This 10-percent limitation applies to installment payments made in advance but does not apply to delinquent installment payments for a prior taxable year of the wife made during her taxable year. (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of allmony or an allowance for support. (ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether - (a) The contingencies described in subdivision (i)(a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or (b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or (c) The total amount which will be paid may be calculated actuarially.↩
5. Petitioner testified in this regard as follows: Q. Now, Mr. Shawhan, paragraph 9 of the separation agreement provides as follows: "The husband also agrees to carry and continue payment on a $10,000 life insurance policy which he now carries with his wife as beneficiary to protect her on the weekly $50 payment until the three years expires." I ask you, Mr. Shawhan, what your understanding was with respect to the $10,000 face amount of the life insurance policy in the event that your death had occurred within the period of time that the $50 payments were to be made? A. Well, I assumed that was security in case I happened to die that she would get payments. I received the policy back when the last payment was made and we both understood it to be a protection for her in case something did happen to me. Q. Was it your understanding that she would receive $10,000 life insurance or the balance of the $50 payments in the event of your death? A. I suppose that ends up being a legal question, but I really didn't separate the obligation in that regard. It was alimony and I was putting up security in lieu of my not being there. As long as I was around I would pay it, of course, and did. I don't know what the terminology may be that you are asking me for. I owed the alimony and had to protect it in some manner. When the obligation ceased I got the policy back, if that throws any light on it.↩