Willet Parry and Ella Faye Parry v. Commissioner. Wayne D. Olson and Betty C. Olson v. Commissioner.
Parry v. Commissioner
Docket Nos. 4147-63, 4569-63.
United States Tax Court
T.C. Memo 1965-318; 1965 Tax Ct. Memo LEXIS 10; 24 T.C.M. (CCH) 1772; T.C.M. (RIA) 65318; December 14, 1965
Willet Parry, for the petitioners in Docket No. 4147-63. Donald P. Nemir, for the petitioners in Docket No. 4569-63. Harry M. Asch, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' income tax for the year 1961, as follows: Docket No.
Deficiency
4147-63
$515.00
4569-63
343.12
The cases were consolidated for purposes of trial, the filing of briefs, and the promulgation of the opinion. Certain adjustments in Docket No. 4147-63 have not been placed in issue. The issues presented for decision are (1) was the $2,400 paid by Willet Parry to his ex-wife Betty Olson, during 1961, pursuant to a separation agreement incorporated in a divorce decree, includable in the Olsons' gross income pursuant to section 71(a)(1) and deductible by the Parrys under section 215(a), and (2) was the $2,400 paid to Betty Olson by her ex-husband Willet Parry, during 1961, pursuant to a separation *12 agreement incorporated in a divorce decree, nontaxable proceeds of her share of community property. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners in Docket No. 4147-63, Willet Parry (hereinafter referred to as Willet) and Ella Faye Parry, filed a Federal joint income tax return for the year 1961 with the district director of internal revenue, San Francisco, California. Petitioners in Docket No. 4569-63, Wayne D. Olson and Betty C. Olson (hereinafter referred to as Betty) filed a Federal joint income tax return for the year 1961 with the district director of internal revenue, San Francisco, California. Willet and Betty were married in June 1946. Sometime thereafter, they separated for approximately one year. Willet left the apartment in which he and Betty had resided. (Betty continued to live there.) Rental on said apartment was $195 per month. During the period of separation, Willet and Betty each had custody of their daughter for approximately six months. During the period of separation, Betty worked only an average of three days a week as a saleswoman for which she received an average salary of $50 *13 per week. While Willet and Betty were separated, he paid her the following amounts: Date Paid
Amount Paid
11/ 2/59 $195
11/29/59
200
1/ 1/60
195
1/30/60
220
3/ 1/60
220
4/ 1/60
$220
4/30/60
220
5/29/60
265
6/15/60
260
6/30/60
260
7/15/60
262
7/29/60
245
8/12/60
200
10/ 1/60
200 Willet made the above payments even during the period he had custody of his daughter. Betty used the aforesaid payments for the support of herself and her daughter when the daughter resided with her. Betty paid her rent out of said payments. During their separation, Willet and Betty had discussions concerning the equal division of community property in kind and the value to be ascribed to such property. No other person was consulted as to the value of such property nor were the parties assisted by counsel with respect to a separation agreement. Estimated values were placed on the community property, generally by Willet, both at the time of such discussions and when a separation agreement was drawn up. Betty was aware of the share of community property she was to receive, the value that had been placed on such property by Willet, and she accepted such valuation. *14 The parties received equal shares of community property in kind according to Willet's valuation. Willet prepared the draft of a separation agreement. Prior thereto, he researched the tax implications of separation agreements. Willet was willing to provide Betty with money for her support but not for an indefinite period of time. In the aforesaid draft, Willet did not place a label on the monthly payments to be made to Betty. Willet's tax research did not reveal a need for such labeling. Willet believed that in order to obtain a tax deduction for the monthly payments he was making to Betty, it was necessary that such payments were to terminate on the death of either party. In order to insure that the final separation agreement contained such a provision, Willet wrote his attorney who prepared the final separation agreement, requesting him to add such a provision to that document. On November 30, 1960, Willet and Betty executed a separation agreement. The general purpose of that agreement was to settle fully all matters concerning all properties and other rights or obligations arising out of the marriage. That document also provided (1) for the division of community property *15 without placing any value thereon, (2) for Willet to pay certain community debts, and (3) for Betty to have custody of the parties' minor daughter and $75 a month for support of that child. The provisions of the separation agreement relevant herein are as follows: 7. The Husband agrees to pay to the Wife the sum of Ten Thousand Dollars ($10,000.00), payable in fifty (50) monthly payments of Two Hundred Dollars ($200.00) each; the first payment to be paid on or before the tenth (10) day of January, 1961, and continuing on or before the tenth (10th) day of each month thereafter until the sum of Ten Thousand Dollars ($10,000.00) shall have been paid. In the event the wife should at any time remarry, the payments of Two Hundred Dollars ($200.00) per month shall cease after a total sum of Seven Thousand Five Hundred Dollars ($7,500.00) shall have been paid under this paragraph. Liability for payments under this paragraph cease on death of either party. 8. The Husband agrees to continue in force Government Life Insurance Policy No. F12280442 in the sum of Ten Thousand Dollars ($10,000.00) showing Wife as the beneficiary until such time as the responsibility in paragraph numbered 7 herein *16 has been satisfied. Thereafter, Husband agrees to maintain said policy in full force and effect with the Wife as beneficiary should the Wife request the same and pay the Husband an amount equal to the annual premium payments. 9. The Husband agrees to continue in force Prudential Life Insurance Policy No. 10 301 549 in the sum of One Thousand Dollars ($1,000.00) showing Wife as the beneficiary until such time as the responsibility in paragraph numbered 7 herein has been satisfied. Thereafter, Husband agrees to maintain said policy in full force and effect with the Wife as beneficiary should the Wife request the same and pay the Husband an amount equal to the annual premium payments. Paragraphs 8 and 9 of the agreement calling for the continuance in force of two life insurance policies on Willet's life were included in the separation agreement as a result of negotiations between the parties. The $200 monthly payments made pursuant to paragraph 7 of the agreement were intended by Willet to continue, in effect, the support payments that were made to Betty for the period prior to the execution of said agreement. At the time the agreement was executed, Willet had only $3 to $4 of cash *17 in his possession. On December 7, 1960, Willet and Betty were divorced in Reno, Nevada. The divorce decree approved and incorporated by reference the separation agreement. Pursuant to paragraph 7 of the separation agreement, Willet paid to Betty, subsequent to the divorce, $200 per month. The total of such payments in the year 1961 amounted to $2,400. Subsequent to their divorce, both Willet and Betty remarried. Petitioners in Docket No. 4569-63 did not include in their Federal income tax return for the year 1961 the amount of $2,400 received from Willet pursuant to the separation agreement. Respondent determined that such amount constitutes alimony or support and is includable in the Olsons' gross income in accordance with the provisions of section 71 of the Internal Revenue Code of 1954. Petitioners in Docket No. 4147-63 deducted payments totaling $2,400 made to Betty. Respondent disallowed such deduction on the grounds the aforesaid payments did not constitute alimony or support under section 71 and, therefore, are not deductible under section 215(a). Respondent has taken conflicting positions on the sole issue before us and his status herein *18 is similar to that of a stakeholder. Ultimate Findings of Fact 1. The provision in the separation agreement called for the payment by Willet to Betty of $200 per month until the total sum of $10,000 was paid and $7,500 in the event of Betty's remarriage was separately bargained for between those two parties and has no relationship to the community property that was divided by that document. 2. The monthly payments made by Willet to Betty are (a) periodic and (b) in discharge of a legal obligation which, because of the marital relationship, was incurred by him under a written instrument incident to and incorporated in their decree of divorce. Opinion Pursuant to paragraph 7 of the separation agreement incorporated in the divorce decree, Willet paid to his ex-wife Betty, throughout 1961, $200 monthly payments totaling in all $2,400. Petitioners in these consolidated proceedings take opposing positions as to the nature of such payments. Willet (and respondent on brief) [1] contends that all the foregoing payments qualify as periodic payments under the provisions of section 71 of the Internal Revenue Code of 1954[2] and hence are deductible under section 215 of the Internal Revenue Code *19 of 1954. [3]
*20 Betty contends that the payments made by Willet were installment payments in the nature of a division of capital which are not classifiable as periodic alimony payments under section 71, [4] and hence not includable in taxable income. The question we must answer is whether the monthly payments constitute "periodic payments * * * in discharge of * * * a legal obligation which, because of the * * * family relationship is imposed on or incurred by" Willet under the divorce decree within the meaning of section 71(a)(1) or a settlement of community property rights. Where husband and wife in a community property State divide their property in a property settlement, the portion the wife takes as her part of the property is not acquired because of the marital or family relationship since, under community property law, it already belongs to her. If the husband provides, in addition, payments for her support, such payments would be "because of the marital or family relationship" and, hence, alimony under section 71. Whether the payments in fact represent alimony or are in consideration of Betty's interest in the community property *21 is a question that turns on the facts and not upon any labels that the parties may or may not have placed upon them. Ann Hairston Ryker, 33 T.C. 924 (1960). Our inquiry focuses on the dual indicia of a section 71(a)(1) payment, to wit, (1) its periodicity and (2) its support (nonproperty settlement) function. Section 71(c)(1) provides that installments discharging an obligation, the principal sum of which is determinate, shall not be treated as periodic payments. Paragraph 7 of the separation agreement provides that Willet shall pay Betty $10,000 in $200 monthly payments and, in the event Betty shall remarry, the payments of $200 a month shall cease after the total sum of $7,500 shall have been paid. [5] The agreement also provided that all payments would cease in the event of either party's demise.[6] Even though the agreement herein calls for payment of a specific principal sum, such sum is rendered indeterminate by being subject to contingencies of death. Therefore, the monthly installment payments though subject to a maximum limitation do not lose their "periodic" character. Alton F. Lounsbury, 37 T.C. 163 (1961), affd. 321 F. 2d 925 *22 (C.A. 9, 1963).
The remaining qualification under section 71(a) requires that the periodic payments be in the nature of alimony - that is, in discharge of a legal obligation imposed on Willet under the terms of the divorce decree because of his marital relationship with Betty. [7] Betty avers that she received considerably less than one-half of the community property in kind. Accordingly, she maintains that the principal sum to be paid in monthly payments was intended to make up the resulting deficiency. Contrariwise, Willet contends that the distribution of the community property in kind was, and was believed by the parties to be, approximately equal. Under this premise, the monthly payments would be *23 in excess of Betty's share of the community property and therefore deductible as payments in discharge of the parties' marital relationship. Upon close scrutiny of the record before us, we conclude that Betty has failed to introduce evidence sufficient to establish that the actual distribution or community property in kind was, if at all, so substantially unequal in Willet's favor as to warrant the additional monthly payments. Moreover, Betty has failed to persuade us that both she and Willet did not honestly believe at the time the separation agreement was executed that the distribution of community property in kind was equal. Both parties agree that during the period of separation they discussed the kind of property each one of them was to receive as well as the value of such property. They also agree (1) that estimated dollar values were assigned to the community property, generally by Willet, [8] and (2) that they never consulted anybody else as to such valuation. Betty testified that she accepted the estimated values placed on the divided property by Willet. It is clear, according to *24 Willet's valuation of the community property in kind, that both he and Betty were to receive equal shares of said property. On the basis of the foregoing, we are convinced that Willet and Betty actually believed that they were to receive equal shares of community property in kind. Accordingly, we are of the opinion that the parties did not consider the monthly payments as constituting part of the division of community property. On the basis of the foregoing, we conclude that the $200 monthly payments made by Willet to Betty in 1961 ($2,400) are in discharge of a marital obligation incurred by him under the separation agreement incorporated in the divorce decree. [9] Accordingly, such payments are includable in Betty's gross income pursuant to section 71(a)(1) and deductible by Willet pursuant to section 215(a). *25 Decision will be entered under Rule 50 in Docket No. 4147-63. Decision will be entered for respondent in Docket No. 4569-63. Footnotes
1. Pursuant to our instructions, respondent assumed a single position on brief. ↩
2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
3. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
4. See Sec. 71(c)(1), I.R.C. 1954↩.
5. Since Betty did remarry, only a total of $7,500 has to be paid. ↩
6. Paragraphs 8 and 9 of the document provide that Willet shall keep in force $11,000 worth of life insurance to insure the payment of the principal sum of $7,500. However, if Betty were to die, all payments would cease and there is no provision for payment of the principal sum to Betty's estate in the event of her death. Thus, the payments in issue remain contingent despite the foregoing insurance provision.↩
7. The separation agreement herein fails to establish the character of the payments.↩
8. We believe (1) that Willet sought to make fair valuations and (2) that the types of property included in the settlement were believed by the parties to be integrants of such a settlement. ↩
9. The fact that Willet was required to continue payments to Betty in the event of her remarriage does not affect the status of such payments as alimony. (See Burton v. United States, 139 F. Supp. 121 (D.C.D. Utah, 1956); Thomas E. Hogg, 13 T.C. 361↩ (1949).) The provision requiring payments in the event of Betty's remarriage evolved from negotiations between the petitioners.