Philip K. Flagg and Mary R. Flagg v. Commissioner.
Flagg v. Commissioner
Docket No. 4629-65.
United States Tax Court
T.C. Memo 1968-30; 1968 Tax Ct. Memo LEXIS 268; 27 T.C.M. (CCH) 140; T.C.M. (RIA) 68030; February 19, 1968. Filed *268 Philip K. Flagg, pro se, 4940 N. W., 181 Terrace, Miami, Fla. W. Reeder Glass, for the respondent. 141 BAUM Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioners' income tax for the year 1962 in the amount of $494.48. The issues are (1) what amounts were in fact paid to petitioner Mary R. Flagg during 1962 by her ex-husband pursuant to a divorce decree and/or separation agreement, (2) whether certain portions of such payments were taxable as alimony under section 71(a)(1), Internal Revenue Code of 1954, or were nontaxable installment payments under section 71(c); (3) whether petitioner Mary Flagg provided over one-half the support for her daughter Kathryn C. Rosen during 1962 so as to be entitled to a dependency exemption for Kathryn for 1962; (4) whether petitioners incurred certain deductible medical insurance, travel, and interest expenses in 1962. Findings of Fact Issues 1 & 2 - Alimony Petitioners Philip K. and Mary R. Flagg (hereinafter sometimes referred to as Philip and Mary) are husband and wife who, at the time of filing their petition, lived in Miami, Florida. They filed a joint income tax return for the year 1962 with the district *269 director of internal revenue at Jacksonville, Florida. Petitioners were married on December 31, 1962, the last day of the taxable year at issue, in Miami, Florida. Mary, whose legal given name is Maria, was formerly married to Cloyce B. Rosen; they had two children, Kathryn Constance Rosen, born October 18, 1954, and Anna Maria Rosen, born March 14, 1943. Anna was Mary's child and was subsequently adopted by Cloyce. Mary and Cloyce separated during 1956 and subsequently, on September 25, 1956, executed a document entitled "Sworn Agreement", which provided in part as follows: We * * * CLOYCE BURDETTE ROSEN and MARIA R. ROSEN hereby enter into the following agreement which is to govern our future marital relationship or future status in the event that the said marriage is legally dissolved. The said CLOYCE BURDETTE ROSEN agrees that he will grant permission and authority for his spouse to reside with the minor children ANNA MARIA ROSEN and KATHRYN CONSTANCE ROSEN, in the State of Pennsylvania or any other place of their choosing within the continental limits of The United States of America. In conjunction with this phase of the agreement, the said CLOYCE BURDETTE ROSEN further agrees *270 to make a down-payment of two thousand dollars ($2,000) for the house in which the said MARIA R. ROSEN and minor children are to reside. * * * The said CLOYCE BURDETTE ROSEN further agrees, that in the event of divorce he will grant the sum of one hundred and fifty dollars per month to MARIA R. ROSEN for her support and will grant the sum of fifty dollars to MARIA R. ROSEN for the support of each of the minor children ANNA MARIA ROSEN and KATHRYN CONSTANCE ROSEN until they reach the age of eighteen years or become married or otherwise self supporting. Further, CLOYCE BURDETTE ROSEN agrees that he will continue to carry the minor children, ANNA MARIA ROSEN and KATHRYN CONSTANCE ROSEN, on his military records as dependents so as to be entitled to medical care and survivors benefits. * * * MARIA R. ROSEN further agrees that from the sum allotted for her support, she will make all monthly payments for the domicile in which she and her minor children shall reside. Said payments to continue until such time as full payment is made at which time sole title will be invested in her. MARIA R. ROSEN further agrees that only in the event of her future marriage, and not in the event of legal termination *271 of present marriage, all payment for her support by CLOYCE BURDETTE ROSEN will cease. The clause pertaining to the support of the minor children ANNA MARIA ROSEN and KATHRYN CONSTANCE ROSEN is not to be affected by any future marriage and payment for their support will continue as previously agreed upon. At the time of the "Sworn Agreement", Mary and Cloyce lived in Georgia. Sometime after the agreement was signed, they moved to a house in Levittown, Pennsylvania. The mortgage on this house was in their joint names. Cloyce lived in the house for only a short time. After four or five months, Mary left Pennsylvania and returned to Georgia. The house in Levittown was sold sometime in 1957. On June 11, 1957, in the Superior Court of Richmond County, Georgia, a final judgment and decree of total divorce was issued in the case of Cloyce Burdette Rosen v. Maria R. Rosen. The decree, which did not refer to the "Sworn Agreement," provided in part as follows: 142 That the defendant, Maria R. Rosen, will have full custody and control of * * * Kathryn Constance Rosen * * * and * * * Anna Maria Rosen * * * subject to the provisions hereinafter set out. * * * * * * The plaintiff [Cloyce B. Rosen] *272 will pay to the defendant the sum of $50.00 each month starting immediately, for the support and maintenance of Kathryn Constance Rosen and $50.00 each month starting immediately for the support and maintenance of Anna Maria Rosen. Said sums are to be paid for each child until said child dies, marries, becomes self-supporting, or becomes eighteen years of age, whichever event may happen first. * * * The plaintiff will so long as one of the above mentioned events has not occured (sic) and for so long as he is in the military service of the United States, carry two said mentioned children on his military records as dependents to enable said children to be entitled to medical care and survivor's benefits from the United States Government. The plaintiff will pay to the defendant for her support and maintenance the sum of $150.00 monthly starting immediately, said sum to be paid until the defendant dies or remarries, whichever event may happen first. Upon the happening of either of said events these payments will cease. At the time of the divorce decree, and until December 31, 1962, when she married Philip, Mary lived in an apartment in Miami, Florida. During this entire period, the apartment, *273 as well as the utilities and telephone, were in Cloyce's name. During the year 1962, Cloyce sent Mary $2,326 pursuant to the divorce decree. Petitioners reported none of this amount as taxable income in their 1962 return. In his notice of deficiency, the Commissioner determined that $1,726 of this amount was taxable as alimony income. Issue 3 - Child Support On their income tax return for 1962, petitioners claimed a dependency exemption for Kathryn and took a $600 deduction based thereon, which the Commissioner disallowed. During 1962, Mary and Kathryn lived in an apartment in Miami, Florida, for which the monthly rent was $82.50. Anna also lived in the apartment, sharing in the rental expense, until August 22, 1962, at which time she was married. During 1962, neither Mary nor Philip had any savings. In 1962 Philip had a net salary income of $3,817, and additional resources in the form of loans in the aggregate amount of $1,200, plus certain other nontaxable receipts of $415. [1] *274 He donated a portion of these amounts as gifts to Mary which she used for the maintenance of her household. Cloyce and his parents contributed not more than $625 toward Kathryn's support in 1962 by way of child support payments and gifts. The parties have stipulated as to certain expenses incurred by Mary for the maintenance of her household (including Kathryn) in 1962, as follows: rent, $990; gas and electric utility bills, $152.58; telephone, $85.40. In addition, Mary paid substantial amounts for the support of Kathryn for food, school and other transportation, clothes, allowances, medical and dental charges or insurance, and various other expenses. Her total expenditures for Kathryn's support in 1962, including an allocable portion of the rent, utilities, and telephone charges, were at least $1,400. Issue 4 - Miscellaneous Items In their petition, petitioners claimed an additional medical deduction of $80.80, which they alleged had been inadvertently omitted from their return. At the trial, petitioners contended that further deductible expenses had been incurred by them in 1962 and inadvertently omitted from the return, as follows: Medical
$155.00
(Health insurance: Mary, $48; Philip, $107)
Interest
52.35
Travel expenses
63.00
Total
$270.35
The Commissioner has agreed that additional deductions *275 of The Commissioner has agreed that additional deductions of $48 for medical expenses and of $52.35 for interest expense are allowable. Philip in fact made health insurance payments in the amount of $107 through payroll deductions in 1962, and in fact incurred deductible business expenses in the amount of $63 over a nine-month period in 1962 traveling between two jobs which were 10 miles apart. Opinion RAUM, Judge: 1. Amount received. The initial issue relates to the amount of money actually received by Mary from her former husband in 1962. Both the "Sworn Agreement" and the divorce decree provide for payments of $150 per month for Mary and of $50 per month for each child. Since Anna Maria Rosen was over 18 years of age in 1962, Cloyce was obligated by neither instrument to provide for her support. Thus he was required to pay Mary a total of $2,400 in 1962, $1,800 for Mary's support and $600 for Kathryn's support. In his notice of deficiency, the Commissioner determined that Cloyce had made payments constituting alimony of $1,726 to Mary in 1962. The Commissioner notes in his brief that he had determined that Mary had received a total sum of $2,326 from Rosen in 1962, and that he *276 had (as required by section 71(b), I.R.C. 1954) deducted $600 from this figure as support for Kathryn, arriving at the alimony figure of $1,726. The parties have stipulated that Cloyce made payments to Mary "in at least the amount of $2,256.00." Petitioners argue that the stipulated facts show that she thus received only $1,656 exclusive of the $600 for Kathryn's support, and the Government insists that the correct amount to be ascribed to her is $1,726, as determined in the deficiency notice. The stipulation is phrased in terms that permit a finding that Mary received "at least" $1,656 for herself. It does not preclude a finding that she may have received more than that amount. The Commissioner determined the correct amount to be $1,726. The record contains no evidence proving him to be in error. Accordingly, since the burden of proof was upon petitioners, we have found that during 1962 Cloyce paid Mary the aggregate amount of $2,326 pursuant to the divorce decree, of which $600 represented support for Kathryn and the remaining $1,726 represented support and maintenance for Mary. 2. Alimony. The next issue involves the nature of the $2,326 received by Mary from Cloyce. Although petitioners *277 appear convinced of the contrary, the Commissioner has consistently conceded that $600 of this amount constitutes child support for Kathryn and is not taxable to petitioners. Section 71(b), I.R.C. 1954. The Commissioner claims that the remaining sum of $1,726 represents periodic alimony payments, taxable to petitioners under section 71(a).[2] *278 *279 Petitioners argue that this sum consists of installment payments to be paid over a period ending ten years or less from the date of the decree or agreement pursuant to which they were paid and that the sum is thus excludable from their gross income under section 71(c). [3] If Cloyce's payments aggregating $1,726 were made pursuant to the divorce decree, there could be no doubt that such payments 144 were periodic alimony payments, taxable to Mary. The relevant portion of the decree provides: The plaintiff [Rosen] will pay to the defendant [Mary] for her support and maintenance the sum of $150.00 monthly starting immediately, said sum to be paid until the defendant *280 dies or remarries, whichever event may happen first. * * * This is clearly not a provision for "installment payments" as contemplated in section 71(c). There is no hint of a principal sum; the total amount that may be paid is completely indefinite, for the payments are for no fixed period of years; there is no reason for not taking literally the description of the payments as "for * * * support and maintenance". Further, the provision for cessation upon death or remarriage clearly requires that the payments be classified as periodic. Helen Stewart Cramer, 36 T.C. 1136. See also sections 1.71-1(d) (3)(i) and 1.71-1(d)(4), Income Tax Regs.; Rev. Rul. 60-250, 1960-2 C.B. 435. Petitioners appear to argue, however, that the payments were made pursuant to the "Sworn Agreement" entered into prior to the divorce decree. We need not decide pursuant to which instrument the payments were made, for we find that the "Sworn Agreement," as well as the decree, provides for periodic payments, taxable to Mary. The "Sworn Agreement," like the decree, obligated Cloyce to pay Mary $150 per month "for her support." Petitioners, however, rely on the following language in the "Sworn Agreement," which was *281 not incorporated into the decree: MARIA R. ROSEN further agrees that from the sum allotted for her support, she will make all monthly payments for the domicile in which she and her minor children shall reside. Said payments to continue until such time as full payment is made at which time sole title will be invested in her. Petitioners suggest that somehow the above language fixes a "principal sum" within the meaning of section 71(c)(1). We cannot agree. There is nothing in the "Sworn Agreement" that makes the amount of Cloyce's payments dependent on the cost of the "domicile" that Mary was to provide. [4] *282 A reasonable interpretation of the above portion of the "Sworn Agreement" is that Mary was to use a part of the $150 per month received from Cloyce for her support to make payments on a house and that Mary would continue to make such payments until title to the house vested in her. The agreement does not mean that Cloyce's payments to Mary would cease when the house was paid for. In fact, Mary moved from the house before her divorce, and the house was sold soon thereafter; Cloyce's payments of $150 per month, however, continued. Finally, even if the "Sworn Agreement" means all that petitioners would have us believe it means, the fact that Mary's support payments would cease upon her remarriage renders such payments periodic and taxable to her regardless of whether there was a specified fixed sum and regardless of the length of time over which the payments were to have been made. Sections 1.71-1(d)(3)(i) and 1.71-1(d)(4), Income Tax Regs.; Rev. Rul. 60-250, 1960-2 C. B. 435. We hold, therefore, that petitioner Mary received taxable alimony income of $1,726 in 1962. 3. Child support. The parties have stipulated as to some of the expenses incurred for maintenance of Mary's household, a portion of which is allocable to Kathryn, and the record contains testimony as to other items of support. The testimony was not wholly satisfactory and was exaggerated in some respects, claiming total expenditures in excess of $2,000 for Kathryn. Nevertheless, we were reasonably satisfied that Mary had spent at *283 least $1,400 for Kathryn's support in 1962, and that it represented more than one-half of her support for that year. We so find as a fact. 4. Miscellaneous deductions. Petitioners seek additional deductions as follows: Medical
$155.00
(Health insurance: Mary, $48; Philip, $107)
Interest
52.35
Travel expenses
63.00
Total
$270.35
The Commissioner conceded the $52.35 interest item and $48 health insurance item for Mary at the trial, and we received evidence as to Philip's claimed health insurance of $107 and his claimed business expense of $63 for travel between two jobs. Although the record is skimpy in this regard, we are nevertheless satisfied that these latter amounts were in fact paid and that the petitioners are entitled to deductions therefor. Decision will be entered under Rule 50. 145 Footnotes
1. These consisted of a tax refund of $137, V. A. compensation of $240, and V. A. insurance dividends of $38.
2. The applicable provisions of section 71 are as follows: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written Separation Agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. * * * (c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period for Payment Is More Than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
3. Petitioners have abandoned the argument that any part of the $1,726 was sufficiently "fixed" to qualify as child support under the rule of Commissioner v. Lester 366 U.S. 299↩.
4. We are not here concerned with the provision for the $2,000 down payment for the house in which Mary and the children were to reside. There is no evidence in the record as to whether such sum was ever paid, and neither party has made any argument relating to such payment.