HELEN STEWART CRAMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81255. Filed September 29, 1961.

*Ruth E. Bates, Esq.*, for the petitioner.

*Stephen W. Craig, Esq.*, and *Aaron S. Resnick, Esq.*, for the respondent.

PIERCE, *Judge:* Respondent determined a deficiency in income tax against the petitioner for the calendar year 1955 in the amount of $526.

The sole issue for decision is whether certain payments for support and maintenance, which the petitioner received from her former husband in 1955 after the parties had been divorced, and which were paid to her pursuant to a written agreement that had been executed by the parties prior to the divorce but that was not mentioned in the divorce decree, constitute taxable income to petitioner in 1955.

### FINDINGS OF FACT.

Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by reference.

Petitioner is a resident of Riverside, California. She filed her individual Federal income tax return for 1955 with the district director of internal revenue at San Francisco, California.

Petitioner was formerly the wife of Sterling S. Cramer (hereinafter referred to as Cramer), whom she had married on June 17, 1926, and from whom she was divorced (as hereafter shown) under a final decree of divorce entered on September 23, 1954. In the spring of 1953, petitioner and Cramer had begun to experience marital difficulties; and at about that time Cramer told petitioner that he did not wish to live with her any more. He suggested that petitioner enroll in Stanford University, so as to better equip herself to earn her own

living; and shortly thereafter petitioner followed such suggestion, and did enroll for a summer school course in said university. There was no discussion at this time about a divorce, and petitioner hoped that she and her husband would resume living together when the summer school session ended.

Subsequently in August 1953, petitioner received in the mail from Cramer an instrument which purported to be a property settlement agreement, accompanied by a letter from him asking her to sign the same and suggesting that she consult an attorney acquaintance if she needed legal advice. Petitioner wrote Cramer that she would not sign the instrument. Shortly thereafter Cramer called on petitioner at Stanford; and there the parties together revised the terms of the proposed instrument. The same was not executed at this time; but Cramer shortly thereafter rewrote the instrument to incorporate the revisions, and then mailed it to petitioner for her signature.

On or about August 16, 1953, Cramer again visited petitioner at Stanford; and at that time, petitioner voluntarily executed the agreement and delivered it to Cramer. This agreement was also executed by Cramer; and there is no dispute here that it constituted a valid agreement.

The agreement provided, so far as is here material, as follows:

### PROPERTY SETTLEMENT AGREEMENT

STERLING S. CRAMER, husband, and HELEN S. CRAMER, wife, hereby agree that the parties hereto are husband and wife, and that it is their mutual desire to effect a final and complete settlement of their respective property rights with reference to their marital status and to each other, and to effectuate such final and complete settlement they agree particularly as follows:

### I

Husband shall pay to wife for her support and maintenance a sum equal to $250.00 after Federal Income Tax, each month in advance, commencing with the first day of July, 1953, and continuing until any of the following events occur:

a. Said HELEN S. CRAMER has completed three collegiate or university years of two semesters or three quarters each; * * *

b. Said HELEN S. CRAMER has been gainfully employed on a fulltime basis for not less than one year.

c. Said HELEN S. CRAMER dies or remarries.

It is hereby understood and agreed hereto that the obligation of husband to pay wife the said sum shall immediately cease upon any of the above named events occuring [sic], and that in no event will said payments be continued beyond June 30th, 1956.

\* \* \* \* \* \* \*

### V

Each party does hereby release, relinquish and waive to the other any and all further claims he or she may now have, or may hereafter acquire against the other for support and maintenance, or otherwise * * *

\* \* \* \* \* \* \*

## XI

This agreement may, subject to the court's approval, be made a part of any decree of divorce between the parties.

The other portions of the agreement which are not above quoted, pertained principally to arrangements regarding insurance, disposition of household property, mutual releases, nonincurrence of future debts, and retention of separately owned real and personal property.

At the time petitioner executed said agreement, she knew that it was her husband's intention to effect a separation; but she did not want a divorce.

On August 26, 1953, Cramer filed suit for divorce against petitioner in California; and on August 28, 1953, petitioner received a copy of the divorce complaint by mail. Thereupon, she went before a notary where she admitted service, waived notice of further proceedings, and consented to the entry of a default decree of divorce.

An interlocutory decree of divorce was entered September 22, 1953; and the final decree of divorce was entered September 23, 1954. In neither the interlocutory decree nor in the final decree was said agreement of August 16, 1953, mentioned, nor was any provision made in either of such decrees for alimony.

Pursuant to said agreement of August 16, 1953, Cramer deposited to the petitioner's account during the year 1955, the sum of $3,000, representing payments of $250 per month for 12 months. It has been stipulated that said amount was paid pursuant to the provisions of section I of the agreement (hereinabove quoted) which pertained to payments "for her support and maintenance." None of the contingencies mentioned in section I had arisen.

Petitioner, in her income tax return for the year 1955 did not include in her income the payments so received by her from Cramer; but she did report their receipt and alleged that they were not taxable to her. Respondent, in his deficiency notice, determined that the same were "periodic payments" received by her subsequent to the decree of divorce, and that they constituted taxable income to her for the year 1955.

#### OPINION.

The agreement under which the monthly payments in question were made, was entitled "Property Settlement Agreement." However, it included several separately numbered sections. Some of these pertained principally to property adjustments and mutual releases; and section I (from which we have hereinabove quoted) pertained principally to an obligation of Cramer to make specified monthly payments to petitioner "for her support and maintenance." This Court has heretofore held that, in such a situation, it is not necessary to press all provisions of an agreement into the same mold,

when the parties themselves have differentiated them; and that the taxable effect of each section of the agreement may be determined separately. *Edward Bartsch*, 18 T.C. 65, affirmed per curiam 203 F. 2d 715 (C.A. 2).

Here, we are concerned only with the taxability of the "support and maintenance" payments, provided for in section I of the agreement. Since these payments were received by petitioner in 1955, their taxable status is controlled by the 1954 Code. Section 71(a)(1) of said Code pertains to situations where such payments are received by a wife who has theretofore been *divorced* or *legally separated* from the payor-husband. It provides, so far as is here material, as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

    (a) GENERAL RULE.—

        (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced * * * from her husband under a decree of divorce * * *, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is * * * incurred by the husband under * * * a written instrument incident to such divorce * * *

Subsection (c) of section 71 further provides, so far as here material:

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

        (1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

        (2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.— * * * [not here applicable.]

The above-mentioned provisions of the 1954 Code are substantially the same as the corresponding provisions of section 22(k) of the 1939 Code.[1]

We turn now to consideration of the applicability of section 71(a) (1) to the present case. The parties have stipulated that petitioner was divorced from her husband, and that the payments involved were made and received subsequent to said divorce. Furthermore, in light of the facts which we have hereinabove found, there can be no reasonable doubt that these payments were made by the husband in

---

[1] Congress, in adopting section 71 of the 1954 Code, not only reenacted without substantial change, the cognate provisions of section 22(k) of the 1939 Code; but it also added two new provisions which had no counterpart in the 1939 Code. These are:

Subsection (a)(2) pertaining to situations where periodic payments are made under a written separation agreement executed after August 16, 1954. This subsection, unlike subsection (a)(1), contains no requirement that the wife be *divorced* or *legally separated*.

Subsection (a)(3) pertaining to situations where periodic payments are made under a *decree for support* entered after March 1, 1954. It does not include a requirement that the wife be *divorced* or *legally separated*.

Neither of the above-mentioned new subsections is here applicable. The committee reports indicate that the intent of said new subsections was to "extend" existing law. See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 10–11 (1954); H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 9–10.

discharge of a legal obligation incurred because of the marital relationship. Thus, there remain for consideration only two questions:

(1) Whether the payments involved qualify as "periodic payments" within the meaning of section 71(a)(1), which may make them includible in the wife's gross income; or whether they qualify as "installment payments" of "a principal sum" within the meaning of section 71(c), which are not includible in income.

(2) Whether the written agreement under which the husband's obligation to make the payments was incurred, was "incident to" the divorce, within the meaning of section 71(a)(1).[2]

1. Under the cognate provisions of the 1939 Code, the question of whether payments made to a divorced wife for her support and maintenance qualify as "periodic payments," has been the subject of extensive litigation, in which this Court and several of the Courts of Appeals have taken differing positions.

In *J. B. Steinel*, 10 T.C. 409 (1948), the husband was obligated to pay his wife $100 per month until the sum of $9,500 was paid, subject to the termination of such payments in the event of her death or remarriage. This Court there held that the payments did not qualify as "periodic payments" within the meaning of section 22(k) of the 1939 Code, but were "installment payments" on an obligation to pay a principal sum. The Court stated, in part:

the word "obligation" [to pay a principal sum] is used in section 22(k) in its general sense and includes obligations subject to contingencies where those contingencies have not arisen and have not avoided the obligation during the taxable years. Stated conversely, we are of the opinion that the word "obligation" is not used in section 22(k) to mean only an absolute and unconditional obligation * * *

The case was not appealed.

Subsequently, in *F. Ellsworth Baker*, 17 T.C. 1610 (1952), reversed in part 205 F. 2d 369 (C.A. 2, 1953), this Court dealt with a situation where the husband was to pay the wife $300 per month for 1 year and $200 per month thereafter for 5 years, both subject to termination on her remarriage or death. We stated that "Simple arithmetic indicates that the principal sum to be paid was $15,600"; and, following the theory of *Steinel*, we disregarded the contingencies and held that the payments were "installment payments" of a principal sum. The Court of Appeals for the Second Circuit, in reversing us on this point, held that the contingencies of the wife's death or remarriage prevented there being a "principal sum" which was susceptible of calculation. It rejected the theory of the *Steinel* case; and it held that

---

[2] It is settled that a predivorce agreement need not be incorporated into the divorce *decree* to satisfy this prerequisite of section 71(a)(1). *Alice L. Heath*, 30 T.C. 339 (1958), affd. 265 F. 2d 662 (C.A. 2, 1959), certiorari denied 361 U.S. 824 (1959); *Raoul Walsh*, 21 T.C. 1063 (1954).

the payments involved were "periodic payments." The decision rested squarely on the presence of the contingencies.

The principle applied by the Second Circuit in the above-mentioned *Baker* case has been followed by several other circuits. *Smith's Estate* v. *Commissioner*, 208 F. 2d 349 (C.A. 3, 1953), reversing in part a Memorandum Opinion of this Court; *Davidson* v. *Commissioner*, 219 F. 2d 147 (C.A. 9, 1955), modifying a Memorandum Opinion of this Court; *Prewett* v. *Commissioner*, 221 F. 2d 250 (C.A. 8, 1955), reversing 22 T.C. 270 (1954); *Fidler* v. *Commissioner*, 231 F. 2d 138 (C.A. 9, 1956), reversing in part 20 T.C. 1081 (1953). We have found no contrary Court of Appeals decision.

In the light of the foregoing, we have concluded, as to the question here considered, that the principle expressed by the Second Circuit in the *Baker* case should here be followed. The contrary principle applied in the *Steinel* case will no longer be followed. Accordingly we hold that the payments here involved are "periodic payments" within the meaning of section 71(a)(1) of the 1954 Code.

2. The remaining question is whether the written predivorce agreement here involved, was "incident to" the divorce. Under the cognate provisions of the 1939 Code, this question likewise has been the subject of extensive litigation, in which this Court and several of the Courts of Appeals have taken differing positions.

In *Joseph J. Lerner*, 15 T.C. 379 (1950), reversed 195 F. 2d 296 (C.A. 2, 1952), this Court took the position that, in order for a written predivorce agreement to be "incident to" the divorce, the divorce must have been contemplated by the parties at the time the separation agreement was entered into. The Court of Appeals for the Second Circuit reversed our decision on this point, and said: "the term 'written instrument incident to such divorce' was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred * * *."

Subsequently, the same circuit decided *Holt* v. *Commissioner*, 226 F. 2d 757 (C.A. 2, 1955), reversing 23 T.C. 469 (1954), certiorari denied 350 U.S. 982 (1956). In this later case, the court reiterated and explained the principle which it had applied in the *Lerner* case, saying:

We may assume that the wife would not have signed the agreement had she been aware of the course the husband was to pursue [in obtaining a divorce]. Because of the lack of "mutuality of intent or plan," the Tax Court, notwithstanding a vigorous dissent * * * in which * * * [two other Judges] concurred, held the agreement was not "incident to such divorce." But our repeated decisions on this subject have been founded upon principles which make irrelevant such incidental matters * * *.

* * * we intended to cut through the endless combinations of miscellaneous versions of the preliminaries to these matrimonial arrangements, and give the statute an interpretation which would express the legislative intent and at

the same time eliminate confusion and uncertainty by holding that the words "'incident to such divorce'", "should be read as referring to the *status* rather than merely the *decree* of divorce or separation." (Emphasis that of the Court.) Thus where a legal obligation to support survives the dissolution of the marital relationship and such obligation is evidenced by the terms of a written agreement, as in the case now before us, the wife must pay the income taxes on the amounts received by her for support and maintenance. * * *

The principle of the Second Circuit's decision in the *Lerner* case, which was thus elucidated by the same court in the *Holt* case, has been cited with approval and been applied by two other circuits: *Feinberg* v. *Commissioner*, 198 F. 2d 260 (C.A. 3, 1952), reversing 16 T.C. 1485 (1951); *Commissioner* v. *Miller*, 199 F. 2d 597 (C.A. 9, 1952), reversing 16 T.C. 1010 (1951). We have found no contrary Court of Appeals decision.

In view of the foregoing, we conclude that the principle applied by the Courts of Appeals in the above-mentioned cases should here be given effect. Accordingly, we hold that the agreement here involved was "incident to" the divorce.

We approve the respondent's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*

WITHEY, *J.*, dissents.