F. Herbert and Edeltraut M. Coyle v. Commissioner. Henriette H. Coyle v. Commissioner.
Coyle v. Commissioner
Docket Nos. 2917-62, 2981-62.
United States Tax Court
T.C. Memo 1964-334; 1964 Tax Ct. Memo LEXIS 6; 23 T.C.M. (CCH) 2068; T.C.M. (RIA) 64334; December 29, 1964
F. Herbert Coyle, pro se, 232 Saylong Dr., Pittsburgh, Pa., in Docket No. 2917-62. Melvin Schwartz, for the petitioner in Docket No. 2981-62. Charles A. Boyce, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income taxes of petitioners in the amounts and for the years which follow: Docket
Defi-
Petitioner
No.
Year
ciency
F. Herbert and Edel-
traut M. Coyle
2917-62
1958
$573.23
1959
422.79
1960
427.78
Henriette H. Coyle
2981-62
1958
112.00
1959
287.00
1960
278.00 These dockets have been consolidated for trial and opinion. The issues raised by the pleadings in Docket No. 2917-62 have been settled by the parties with the exception of: (1) whether respondent has erred in refusing to allow the deduction of amounts paid by petitioner to his former wife as alimony pendente lite, and (2) whether respondent has erred in refusing *8 to allow as an alimony deduction amounts paid by petitioner to his former wife in pursuance of a predivorce agreement. The sole issue raised by the pleadings in Docket No. 2981-62 is whether respondent has erred in including in the taxable income of petitioner the amounts paid her referred to in (2) above. The settled issues in Docket No. 2917-62 will be given effect under Rule 50. Findings of Fact The stipulated facts in both dockets are found as agreed. Petitioner Henriette H. Coyle, hereinafter referred to as Henriette, is an individual residing in Pittsburgh, Pennsylvania. The individual Federal income tax returns of Henriette for the calendar years 1958, 1959, and 1960 were filed with the district director of internal revenue at Pittsburgh, Pennsylvania. Petitioners F. Herbert and Edeltraut M. Coyle are husband and wife also residing in Pittsburgh, Pennsylvania, and they filed their joint Federal income tax returns for the years 1958, 1959, and 1960 with the district director of internal revenue at Pittsburgh, Pennsylvania. F. Herbert Coyle, hereinafter referred to as Herbert, and Henriette were married on October 14, 1952. In 1952, Henriette and Herbert purchased a *9 house and lot located at 232 Saylong Drive, Pittsburgh, Pennsylvania. To make the purchase Henriette and Herbert borrowed $9,450 from the People's First National Bank and Trust Company, Pittsburgh, Pennsylvania, and as security for the loan executed a mortgage on the property purchased. During 1957, Herbert loaned $2,200 to Henriette's son, who was Herbert's stepson. In order to obtain the money loaned to Henriette's son, Herbert borrowed money on his life insurance and also obtained a loan, giving as collateral therefor stock of the Westinghouse Electric Corporation owned by him. In May 1958, Henriette filed a petition in the Court of Common Pleas of Allegheny County, Pennsylvania, for alimony pendente lite and, pursuant to the petition, the Court of Common Pleas entered an order dated May 27, 1958, whereby Herbert was to pay Henriette the sum of $150 per month as alimony pendente lite. Pursuant to the Court's order Herbert paid $375 as alimony pendente lite to Henriette subsequent to May 27, 1958, and prior to August 8, 1958. Prior to August 8, 1958, Henriette and Herbert discussed an absolute divorce to be obtained by Henriette, at which time Herbert agreed to give Henriette *10 one-half of his worth and in addition $15,000 payable at the rate of $150 per month unless Henriette died or remarried; Herbert was to retain the residence. In computing his worth, Herbert considered the equity in the residence as being $5,000, the value of the automobile and furniture as being $500 and $1,000, respectively, and the loan to Henriette's son was valued at $2,200. In arriving at the amount to pay Henriette, Herbert determined the amount of his worth to be approximately $10,000 and agreed to pay Henriette $5,000 as representing one-half of such amount. Prior to August 8, 1958, the attorney handling Henriette's divorce held discussions with Herbert pertaining to the amount which Herbert was to pay per month to Henriette upon Henriette's receiving an absolute divorce. Prior to arriving at the agreed amount of $150 per month for 100 months, Herbert first offered $100 per month, followed by an offer of $115 per month, and then an offer of $125 per month for a period of 120 months. Henriette's attorney pressed Herbert for $150 per month, and Herbert agreed to pay $150 monthly but covering only a maximum of 100 months. On August 8, 1958, Henriette obtained an absolute *11 divorce in the Court of Common Pleas, Allegheny County, Pennsylvania. On the same date Henriette and Herbert executed a deed transferring the property located at 232 Saylong Drive to Herbert in his individual name. Also, on the same date, Herbert borrowed $11,000 from Pittsburgh Home Savings and Loan Association, PittsburghPennsylvania, and executed a bond and mortgage covering the property to such organization in connection with the loan. On that date the amount of $6,988.34 was still owing on the mortgage given by Herbert and Henriette at the time the property was purchased by them in 1952; the amount owing on this prior mortgage was satisfied from the proceeds of the $11,000 loan which Herbert obtained. The Lawyers' Title Company of Pittsburgh, Pennsylvania, handled the closing arrangement in connection with the transfer of the residence from Herbert and Henriette to Herbert, individually, and also the distribution of the $11,000 loan received by Herbert from Pittsburgh Home Savings and Loan Association. Prior to August 8, 1954, Henriette and Herbert had agreed that $1,500 of the $2,200 loan made to Henriette's son would be forgiven by Herbert, leaving $3,500 to be paid *12 to Henriette by Herbert pursuant to the agreement that Herbert was to pay $5,000 to Henriette as one-half of his worth. In connection with the distribution made by the Lawyers' Title Company, after expenses, fees, taxes, and the balance due on the prior mortgage were deducted, $3,500 was distributed to the attorney for Henriette, which amount represented the balance of the $5,000 which Herbert had agreed to pay Henriette as one-half of his worth. On August 8, 1958, Herbert executed a "BOND" to Henriette conditioned upon Herbert's paying the sum of $15,000 to Henriette at the rate of $75 semi-monthly. The bond also contained the following provision: Provided, however, that in the event of the death or remarriage of the said Henriette H. Coyle, the obligations and terms of the within instrument shall become null and void. On August 8, 1958, Herbert executed to Henriette a second mortgage on the residence securing the bond of even date to Henriette, referred to above, and such mortgage contained the following provision: PROVIDED, however, that in the event of the death or remarriage of Henriette H. Coyle, the obligations and terms of the within instrument shall become null and *13 void. THE lien of this mortgage and the bond accompanying same is hereby postponed in favor of a certain mortgage from F. Herbert Coyle to Pittsburgh Home Savings and Loan Association, dated 8-8-1958 and recorded 8-11-1958, in the amount of $11,000.00. Beginning August 15, 1958, Herbert paid to Henriette the sum of $75 semi-monthly under the terms and conditions of the bond referred to. On November 22, 1958, Herbert married his present wife, Edeltraut, and for the years 1958, 1959, and 1960 they filed joint Federal income tax returns. In 1958 Herbert paid $375 to Henriette as alimony pendente lite pursuant to Court order and also paid Henriette $750 pursuant to the bond. These amounts were claimed as deductions by Herbert and Edeltraut on their joint Federal income tax return for the year 1958. In each of the years 1959 and 1960, Herbert paid $1,800 to Henriette pursuant to the bond and on their joint Federal income tax returns for each of the years 1959 and 1960 Herbert and Edeltraut claimed the amount of $1,800 as a deduction. Henriette did not include in her Federal income tax returns for the years 1958, 1959, and 1960 any amounts received from Herbert pursuant to the *14 bond, nor did she include any amounts paid to her by Herbert in 1958 pursuant to the order of the Court granting alimony pendente lite. Opinion To protect the revenue, respondent has taken inconsistent positions herein. We think his position is wrong in Docket No. 2917-62 and correct as to Docket No. 2981-62. Herbert contends that under section 215(a) [1] of the Internal Revenue Code of 1954 he is entitled to deduct both the amount paid Henriette as alimony pendente lite in 1958 and the amount paid to her by him for each year at issue subsequent to the divorce under the terms of his "bond" to her because such payments are includable in her gross taxable income under section 71(a)[2] of that Code as periodic payments in discharge of his marital obligation to support her incurred by him in a written agreement (the "bond") which was incident to a divorce. Henriette makes no issue relative to the alimony pendente lite payments but does contend that the "bond" payments are installments in discharge of a principal sum specified in the "bond" and are therefore not includable in her taxable income because they are not periodic payments under section 71(c)(1). [3] *15 *16 Herbert and Henriette had, prior to or at least simultaneously with the obtaining of their divorce, agreed upon the principle that he would make a property settlement with her based upon one-half of his worth at that time. He had, in pursuance thereof, agreed to and did discharge this agreement by paying her, either in cash or by forgiveness of the debt of her son, the amount of $5,000. It is payment of such an amount that is, under the cited statutes, of no tax consequence to either a divorced or separated husband or wife. Such payments are a mere division of property already owned by one or the other, or both of them, and do not represent, in the view of Congress, a change in their economic status which amounts to deductible expense, on one hand, or the receipt of taxable income, on the other. Section 71(c)(1), supra. Where, however, payments are made by the husband incident to a divorce which represent his obligation to support his divorced wife, which obligation arises either through the terms of a decree or an agreement incidental thereto, they represent support moneys which Congress has likened to alimony and clearly has provided are deductible by the husband and are includable *17 in the taxable income of the wife. Sections 215(a) and 71(a), supra. There can be no question here but that the amounts paid by Herbert pendente lite prior to the entry of the divorce decree in pursuance of the order of the divorce court are deductible by him and includable in Henriette's taxable income. Cf. Florence Korman, 36 T.C. 654, affirmed per curiam 298 F. 2d 444. On that issue we find for petitioners in Docket No. 2917-62. With respect to payments made by Herbert under his "bond" to Henriette, there can likewise be little doubt that they were agreed to and made for her support. The limitation upon any possible aggregate of such payments we find to be, not the "principal sum" referred to in section 71(c)(1), but rather represents at $150 per month the aggregate amount which Herbert intended would be paid Henriette representing his moral obligation to support her. If the aggregate sum has any property-settlement connotation, Henriette has failed to sustain her burden of showing the same. Such payments have the earmarks of support money not only because they have no relationship to the value of any property divided between the payor and payee, *18 but because it was agreed by all concerned that they were to cease in the event Henriette no longer needed support because of her death or remarriage. Helen Stewart Cramer, 36 T.C. 1136. The fact that under Pennsylvania law an obligation to pay alimony is not recognized in the allowance of an absolute divorce has little, if any, bearing on the issue before us. See Hooks v. Hooks, 123 Pa. Super. 507, 187 A. 245; Commonwealth v. Scholl, 156 Pa. Super. 136, 39 A. 2d 719. It is clear the decree of divorce required none, but it is also clear that the parties entered into a written agreement which provided for payments by Herbert to Henriette which bear the unmistakable marks of support payments within the meaning of sections 71(a) and (c) and 215(a). The fact that the agreement is technically unilateral because it is in the form of a bond and a mortgage executed as security therefor does nothing to detract from its statutory character as a "written instrument." That it is incident to a divorce is clear from this record, particularly in light of the fact that alimony may not be provided for in a Pennsylvania absolute divorce. See Helen Stewart Cramer, supra. *19 We sustain the respondent in Docket No. 2981-62 on this issue and hold for petitioners on the same issue in Docket No. 2917-62. Because of agreed adjustments to the deficiencies determined, Decision in Docket No. 2917-62 will be entered under Rule 50. Decision in Docket No. 2981-62 will be entered for the respondent. Footnotes
1. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income. 2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written Separation Agreement. - If a wife is separated from her husband and there is a written separation agreement executed after [August 16, 1954] the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) Decree for Support. - If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after [August 16, 1954] the date of enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. ↩
3. SEC. 71(c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.↩