GEORGE B. KENT, JR., AND SANDRA JO KENT, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 657–72.    Filed October 31, 1973.

*Sheldon Mitchell*, for the petitioners.
*Harry Beckhoff*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in petitioners'
Federal income tax for the taxable year ending December 31, 1969, in
the amount of $4,369.

The sole issue presented for our determination is whether amounts
paid by petitioner George B. Kent, Jr., to his former wife, pursuant
to a divorce decree, qualify as periodic payments within the provisions
of section 71(a)(1) of the Internal Revenue Code of 1954,[1] and are
therefore deductible by him under section 215.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and
the exhibits attached thereto are incorporated herein by this reference.

Petitioners George B. Kent, Jr., and Sandra Jo Kent, husband and
wife, resided in Scottsdale, Ariz., at the time their petition was filed.
They filed a joint Federal income tax return for the calendar year
1969 with an office of the Internal Revenue Service. Any reference to
"petitioner" hereinafter shall be deemed to mean George B. Kent, Jr.

Prior to April 4, 1967, petitioner was married to Jeanne Diane Kent
(hereinafter sometimes referred to as Jeanne).

On or as of March 30, 1967, petitioner and Jeanne, fully represented
by counsel, executed a Property Settlement Agreement (agreement)
pursuant to divorce proceedings instituted by Jeanne in the Superior

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise
indicated.

134

Court of the State of Arizona in and for the County of Maricopa. This agreement recites, in pertinent part:

5. * * * that there is no other contract, oral or in writing, existing between the parties hereto relative to the matters herein contained and that all agreements and understandings between the parties are embodied in this Agreement; * * *

On April 4, 1967, Jeanne obtained a Judgment and Decree of Divorce in the aforesaid action which approved and incorporated the agreement of March 30, 1967. The decree provided, *inter alia*, for a distribution of property, child support, and support and alimony for Jeanne. Specific to the matter herein are the following provisions:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, Pursuant to said Property Settlement Agreement, that the defendant shall pay to the plaintiff, through the Clerk of the Superior Court of Maricopa County, Arizona, the following sums:

\*         \*         \*         \*         \*         \*         \*

(b) For a period up to and including the 1st day of September, 1971, the sum of $600.00 per month as and for alimony and the support of the plaintiff, payable one-half thereof, or the amount of $300.00 on the 1st day of each month, then a like amount on the 15th day of each month, with the first payment commencing on the 1st day of April, 1967.

(c) After the 1st day of September, 1971, all alimony payments provided for herein and hereunder are to cease and the defendant's responsibility for said alimony shall abate and extinguish as of and subsequent to said date.

In 1969, pursuant to the decree, petitioner made 12 monthly payments of $600 each to Jeanne for alimony and support. On his Federal income tax return for said year, petitioner claimed as a deduction for alimony, under section 215, the amount of $7,500.[2]

Jeanne remarried in October 1970 and petitioner, upon notification of the marriage, felt he was no longer obligated to comply with the decree. He thereupon deducted the amount he had paid in October for alimony to Jeanne from the next-due child support payment and thereafter ceased making payment of the alimony award.

Up to and through the date of trial herein, Jeanne has not instituted proceedings in the appropriate court for recovery of the past-due amounts.

In his notice of deficiency, dated October 29, 1971, respondent disallowed the claimed deduction for alimony for the year 1969.

OPINION

Section 215 allows the husband to deduct amounts which are paid to the wife during his taxable year and which are includable in her gross income by virtue of section 71. In pertinent part section 71 provides:

---

[2] Petitioner has conceded that the actual amount paid as alimony in 1969 was $7,200.

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

  (a) GENERAL RULE.—

    (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

    \*     \*     \*     \*     \*     \*     \*

  (c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

    (1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

Petitioner contends that the payments in dispute constitute periodic payments within the meaning of section 71(a)(1). Respondent, on the other hand, maintains that the payments are installment payments as described in section 71(c)(1) and, hence, are not to be considered periodic for purposes of section 71(a).

Specifically, petitioner argues that although provisions of the decree recite a monthly sum payable for an exact term of less than 10 years,[3] from which the gross amount may be determined by mathematical computation, the fact that the total sum is not expressly stated precludes classification of the payments as installment payments under section 71(c)(1). In the alternative, petitioner maintains that even if the payments are initially determined to be installment payments within the general rule of section 71(c)(1), they qualify under the exception specified in section 1.71–1(d)(3)(i) and (ii), Income Tax Regs.,[4] and, thus, should properly be treated as periodic payments.

---

[3] Sec. 71(c)(2) provides an exception to the general rule of sec. 71(c)(1) if the payments are to exceed a period of 10 years.

[4] Sec. 1.71–1 Alimony and separate maintenance payments; income to wife, or former wife.

(d)(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether—

(a) The contingencies described in subdivision (i)(a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(c) The total amount which will be paid may be calculated actuarially.

We discuss petitioner's initial contention first.

It has long been this Court's view that there is no material difference between a decree where the total amount payable is so stated and one where it is necessary to multiply the payments by a period certain in order to determine the principal sum specified. *Estate of Frank P. Orsatti*, 12 T.C. 188 (1949); *Frank R. Casey*, 12 T.C. 224 (1949); *Harold M. Fleming*, 14 T.C. 1308 (1950). "There is at best only a formal difference between such a decree and one where the total amount is expressly set out." *Estate of Frank P. Orsatti, supra* at 192.

The decree herein provides for a $600 per month payment for 54 months. If we assume, *arguendo*, that the payments are not subject to any of the contingencies of death of Jeanne or petitioner, remarriage of Jeanne, or change in the economic status of either spouse (any one of which could serve to alter the aggregate amount of the payments), then it is clear that mere mathematics ($600×54) will ascertain an exact principal sum ($32,400) specified in the decree. See sec. 1.71–1 (d) (5), example (3), Income Tax Regs. We are not persuaded by petitioner's argument that a literal compliance with section 71(c) (1) precludes multiplication and accordingly we hold that his initial contention must fail.

Nothwithstanding the above, petitioner cloaks himself in the Ninth Circuit Court of Appeals' decision of *Myers* v. *Commissioner*, 212 F. 2d 448 (C.A. 9, 1954), which reversed a Memorandum Opinion of this Court. Petitioner maintains that by virtue of our decision in *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971), a decision in the matter before us is controlled by *Myers*. We disagree.

The *Myers* controversy originated in this Court (a Memorandum Opinion of this Court dated Nov. 28, 1952) with the issue the same as presented herein—periodic payments vs. installment payments. The property settlement agreement therein provided for payments of $250 per month for a period of 6 years, whether the wife remarried or not. The taxpayer in *Myers* argued in this Court that the payments were subject to a contingency based on survival of both spouses.[5] However, the Tax Court held that the word "obligation," used in section 22 (k) of the Internal Revenue Code of 1939, included obligations subject to contingencies where those contingencies had not arisen and had not voided the obligation during the taxable year. See *J. B. Steinel*, 10

---

[5] The decree in *Myers* v. *Commissioner*, 212 F.2d 448 (C.A. 9, 1954), reversing a Memorandum Opinion of this Court, did not explicitly state the contingency of death. It appears, therefore, that since the decree was obtained in California, taxpayer's argument therein depended upon California law to impose said contingency. See Cal. Civ. Code sec. 139.

T.C. 409 (1948). The contingency of death was therefore not a factor considered.

The Court of Appeals for the Ninth Circuit reversed our *Myers* decision in 212 F. 2d 448 (C.A. 9, 1954), but no statement as to the contingency issue was put forth.[6] The court stated:

No principal sum was specified in the seventh paragraph of the agreement of June 1, 1945. Therefore the 24 payments mentioned above were not installment payments discharging a part of an obligation the principal sum of which was so specified.* * * [Fn. omitted.]

Notwithstanding that the Ninth Circuit appears to have espoused petitioner's argument,[7] we do not feel constrained, under the facts before us, to find *Myers* controlling. What vitality a literal reading of *Myers* may have is suspect in view of the development of the law in the 19 years since promulgated.

In 1957, 3 years after the *Myers* decision, section 1.71–1, Income Tax Regs., was adopted for the purpose of modifying and clarifying the Government's position on questions of interpretation of section 71. 5 Mertens, Law of Federal Income Taxation, sec. 31A.03 (1969). Specific to the matter herein, section 1.71–1(d)(3)(i), Income Tax Regs., takes the approach that where payments are to be made over a term ending 10 years or less from the date of the decree or agreement, a principal sum will not be ascertainable and the payments will therefore be deemed periodic if two conditions are satisfied: (1) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (2) such payments are in the nature of alimony or an allowance for support. Petitioner, by clinging to *Myers*, is essentially asking us to hold this regulation invalid. This we are loathe to do.

The Court of Appeals for the Seventh Circuit in *Salapatas* v. *Commissioner*, 466 F.2d 79 (C.A. 7, 1971), affirming a Memorandum Opinion of this Court, found section 1.71–1, Income Tax Regs., to be within the reasonable bounds of interpretation of the statute. Specifically, the court upheld the validity of section 1.71–1(d)(3)(i), Income Tax Regs., finding it to serve the purpose for which the statute was enacted.

---

[6] If, in fact, the decision in *Myers* was based on a contingency imposed by California law, our decision in *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971), does not require us to speculate what the Ninth Circuit's interpretation of Arizona law would be. *Estate of George I. Speer*, 57 T.C. 804 (1972).

[7] There seems to be some confusion as to the precise meaning of *Myers*. See *Davidson* v. *Commissioner*, 219 F.2d 147 (C.A. 9, 1955), modifying a Memorandum Opinion of this Court; see also *Ashcraft* v. *Commissioner*, 252 F.2d 200 (C.A. 7, 1958), affirming 28 T.C. 356 (1957).

We express our agreement and find this regulation to be reasonable and consistent with section 71. This regulation should not be overruled except for weighty reasons. *Bingler* v. *Johnson*, 394 U.S. 741 (1969) ; *Commissioner* v. *Southwest Texas Co.*, 333 U.S. 496 (1948).

It is clear from the above that the Ninth Circuit, when deciding *Myers* in 1954, did not have the opportunity to pass on the validity of the regulation adopted in 1957. This fact, viewed in light of the overwhelming acceptance by this Court and various circuit courts of the principles stated in the regulatory material, see *Baker* v. *Commissioner*, 205 F.2d 369 (C.A. 2, 1953), affirming in part and reversing in part 17 T.C. 1610 (1952) ; *Smith's Estate* v. *Commissioner*, 208 F.2d 349 (C.A. 3, 1953), affirming in part and reversing in part a Memorandum Opinion of this Court; *Prewett* v. *Commissioner*, 221 F.2d 250 (C.A. 8, 1955), reversing 22 T.C. 270 (1954) ; *Barrett* v. *United States*, 296 F.2d 309 (C.A. 5, 1961) ; *Helen Stewart Cramer*, 36 T.C. 1136 (1961), leaves us with no compulsion to find the Myers decision dispositive.

With respect to petitioner's alternative contention regarding his compliance with regulatory exception to installment payments, the decree itself is completely devoid of any explicitly stated contingencies. Therefore, in order for petitioner to prevail, it must be shown that the payments herein are subject to certain contingencies which operate by virtue of applicable local law. See sec. 1.71–1(d)(3)(ii)(a), Income Tax Regs.

Arizona law [8] provides that an appropriate local court can, in its discretion, review portions of a divorce decree pertaining to the payment of money for the purpose of modifying an alimony award if the circumstances so warrant. The possibility that such a judicial modification will be made constitutes a contingency imposed by local law and, consequently, the payments will be precluded from classification as installment payments.[9]

However, Arizona case law indicates that an award which constitutes alimony in gross is excepted from the operation of the Arizona modification provision. *Cummings* v. *Lockwood*, 84 Ariz. 335, 327 P.2d 1012 (1958) ; *Bartholomew* v. *Superior Court*, 4 Ariz. App. 50, 417 P.2d 563 (1966) ; *Bennett* v. *Bennett*, 17 Ariz. App. 101, 495 P.2d 871

---

[8] Ariz. Rev. Stat. Ann. sec. 25–321, provides as follows :

Sec. 25–321. Modification of judgment affecting alimony, support or children.

The court may from time to time after entry of final judgment, on petition of either party, amend, revise and alter the portions of the decree which relate to payment of money for the support and maintenance of the wife or the expenses of the proceedings, as may be just, and may amend, change or alter any provision of the judgment respecting the care, custody or maintenance of the children of the parties as circumstances of the parents and welfare of the children require.

[9] Rev. Rul. 59–190, 1959–1 C.B. 23 ; *Lounsbury* v. *Commissioner*, 321 F.2d 925 (C.A. 9, 1963), affirming 37 T.C. 163 (1961). See also *Ellen E. Wyatt*, T.C. Memo. 1962–120.

(1972). Generally, alimony in gross is an unqualified monetary award in a decree, payable in a lump sum or installments, intended as a property settlement and/or support, which is a definite and final adjudication of the rights and obligation of the parties involved. *Barnett* v. *Barnett*, 95 Ariz. 226, 388 P.2d 433 (1964) ; *Cummings* v. *Lockwood*, *supra*. See also *Earley* v. *Earley*, 6 Ariz. App. 110, 430 P.2d 456 (1967) ; *Porreca* v. *Porreca*, 8 Ariz. App. 394, 446 P.2d 500 (1968).

In *Cummings* v. *Lockwood*, *supra*, an allowance of alimony was awarded to the wife payable at $75 per month for a period of 6 months only. Due to economic circumstances, an attempt was made by the former spouse to have this award modified to $150 a month until further court order. The Supreme Court of Arizona found the original judgment to be absolute in defining and limiting the rights of the parties so as to be clearly capable of and intended as a present vesting of the award of support and maintenance to the former wife. Therefore, the court held that the award constituted alimony in gross and as such could not be modified under Ariz. Rev. Stat. Ann. sec. 25–321.

Similarly, in *Bartholomew* v. *Superior Court*, *supra*, the Arizona appellate court, citing the *Cummings* decision, held that a decree requiring the payment of $50 per month for a period of 18 months was an award of alimony in gross and that the modification provision was inapplicable to such an alimony award.

We are unable to see any substantial difference between the payments in *Cummings* and *Bartholomew* and the obligation of petitioner herein to pay $600 per month for 54 months. We therefore hold that the award in the matter before us meets the definition of alimony in gross and cannot be subsequently modified by means of Arizona statute.

Nonetheless, petitioner further contends that Jeanne's failure to assert any claim in regard to the cessation of alimony payments since her remarriage constitutes a contingency that makes the payments periodic for purposes of section 71(a)(1). We find this argument to be without merit.

Petitioner's belief that the payments were subject to the contingency of remarriage is contrary to the express language of paragraph 5 of the agreement.[10] Further, the fact that Jeanne has not as yet availed herself of the judicial process to recover the payments has in no way precluded her from initiating such action,[11] nor is it indicative of consent on her part to the nonpayment thereof.[12]

---

[10] Jeanne's counsel at the time of the divorce was present at the trial herein and testified in regard to the payments in question, "It had to go that long and there could be nothing terminating it, marriage, death, nothing, otherwise the agreement would never have been signed."

[11] Jeanne's counsel further testified that he had been contacted by her and had advised her to bring suit to collect the past-due amount.

[12] See fn. 10 *supra*.

Moreover, the case of *Barnett* v. *Barnett, supra,* is determinative as to the effect of remarriage on an award of alimony in gross. The decree therein provided for a specific sum of alimony payable in monthly installments over a period of time. Within that period the husband ceased making payments on the theory that the wife had remarried and was being adequately supported by her new husband. The Supreme Court of Arizona, upholding *Cummings* v. *Lockwood, supra,* held the award to be an absolute judgment which could not be subsequently modified and found the wife's right to continue to receive the installments did not terminate upon her remarriage.

Petitioner, nevertheless, has attempted to counter with a plethora of case law from various States, other than Arizona, to substantiate his position. We find these cases irrelevant to the present matter, as the applicable local law herein is that of Arizona.

Finally, with respect to the question of whether petitioner's payments to Jeanne were contingent upon death, the general rule is that an allowance or award of alimony in gross is a vested right which is not affected by future events, such as the death of either party. 24 Am. Jur. 2d., Divorce and Separation, sec. 614, p. 735; 27A C.J.S., Divorce, sec. 240, p. 1158; 39 A.L.R. 2d 1413.[13]

We, therefore, conclude that the applicable local law imposes no contingencies on the payments herein that would make the total sum payable by petitioner indefinite and consequently periodic. Arizona law characterizes the unqualified payments of a monthly sum for a specific period of time as alimony in gross which, as shown, cannot be subsequently modified due to a change in the economic status, remarriage, or death of either spouse.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[13] We have been unable to find either Arizona statutory or case law that would preclude application of the general rule. See also *Spencer* v. *Spencer,* 165 Neb. 675, 87 N.W. 2d 212 (1957) ; *Hagerty* v. *Hagerty,* 222 Mich. 166, 192 N.W. 553 (1923).