CLYDE J. CROUSER AND DOROTHY J. CROUSER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 418–78.     Filed March 18, 1980.

*Robert L. McCarty*, for the petitioners.
*Donald W. Mosser*, for the respondent.

OPINION

CHABOT, *Judge:* Respondent determined a deficiency in Federal individual income tax against petitioners for 1975 in the amount of $1,846.50. The issue for decision is whether payments made by petitioner Clyde J. Crouser (hereinafter sometimes referred to as Clyde) to his former wife are deductible under section 215.[1]

All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioners Clyde and Dorothy J. Crouser, husband and wife, resided in Bergen, N.Y.

Before his marriage to Dorothy J. Crouser, Clyde was married to Betty L. Crouser (hereinafter sometimes referred to as Betty). Clyde and Betty were divorced on October 17, 1973.

Clyde sued for divorce from Betty. In her answer and cross-

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.

complaint, Betty demanded an order of separate maintenance and alimony, child support, and division of property.

In a judgment entry dated October 17, 1973 (hereinafter sometimes referred to as the divorce decree), the Common Pleas Court of Muskingum County, Ohio (hereinafter referred to as the Common Pleas Court), set forth the following findings and orders:

This cause came on to be heard upon the evidence in support of the complaint, the answer and cross-complaint and the answer to the cross-complaint, and the Court finds from the evidence that * * * the defendant [Betty] has been guilty of gross neglect of duty; the court finds that defendant's evidence does not support the allegations contained in paragraphs 3 and 5 of defendant's cross-complaint; that the plaintiff [Clyde] is entitled to a divorce.

It is, therefore, ordered, adjudged and decreed that the defendant's cross-complaint be dismissed.

It is further ordered that the marriage contract between the parties be, and hereby is, dissolved.

It is further ordered that the real estate of the parties in West Virginia be, and hereby is, awarded to the defendant free and clear of any claim of plaintiff. * * *

It is further ordered that the defendant be awarded all household goods and furnishings of the parties and the 1972 Chevrolet free and clear of any claim of plaintiff.

It is further ordered that the plaintiff pay through Clerk of this Court to the defendant the sum of $125.00 per week; and the defendant shall pay from such weekly sum each monthly payment on the following accounts to insure that the property heretofore awarded defendant shall be free and clear and that the debts on same be paid:

1. Bank Americard in the total amount of $263.74 payable $14.00 per month;

2. GMAC in the total sum of $2,613.38 payable $118.79 per month;

3. Beneficial Finance Co. in the total sum of $439.00 payable $37.38 per month;

4. Union Brokerage in the total sum of $439.00 payable $37.38 per month;

5. Fay and Mary Moran in the total sum of $13,566.09 payable $150.00 per month;

6. Teamster's Credit Union in the total sum of $150.00 payable $25.00 per month;

7. Gaston Body Shop in the total sum of $167.88 payable in full at present time;

8. Davis Furniture in the total sum of $1,300.00 payable $76.00 per month.

It is ordered that the full sum of $125.00 per week shall be applied against and to the aforesaid accounts, and as any one or more accounts is paid in full, the defendant shall apply such sum which would otherwise be paid on then paid accounts, to such accounts as are then unpaid. Plaintiff's weekly payment of $125.00 shall continue until the accounts are paid in full, or until further order.

It is further ordered that all other property, other than that awarded defendant, shall be the property of plaintiff.

Each party to pay own costs.

During 1975, Clyde paid to Betty, under the divorce decree, $125 per week for 51 weeks—a total of $6,375—through the Clerk of the Common Pleas Court. Not all of the money paid by Clyde to Betty during 1975 was used by Betty for the payment of the obligations set forth in the divorce decree. As of November 1978, Clyde was still making payments to the creditors with respect to those obligations set forth in the divorce decree that Betty failed to pay.

On September 20, 1976, the Common Pleas Court made the following judgment entry:

> This cause came on to be heard upon the motion to terminate the order of payment by plaintiff [Clyde] herein of $125.00 per week, and it appearing to the court that by entry of October 17, 1973 [the divorce decree], herein, the plaintiff was ordered to pay $125.00 per week into court and defendant [Betty] was to apply said weekly sum to the payment of accounts totalling $18,939.09, which accounts are set forth in said judgment entry, and it further appearing to the court that the plaintiff has now paid into court the said sum of $18,939.09,
>
> It is hereby ordered that the said order against plaintiff to pay the weekly sum of $125.00 be, and hereby is, terminated.

On their income tax return for 1975, petitioners claimed a deduction for alimony paid in the amount of $6,500. Respondent disallowed this deduction on the ground that the payments were not alimony but were for a property settlement made over a period of less than 10 years.

Petitioners argue that the payments made during 1975 by Clyde to Betty are deductible because the payments were not for a principal sum specified in the divorce decree. Respondent disagrees, arguing that the total amount to be paid could be calculated based on the divorce decree.

Petitioners also argue that the payments are deductible because they were contingent and in the nature of support. Respondent disagrees, and asserts that section 1.71–1(d)(3), Income Tax Regs., does not apply to the payments.

With respect to both arguments, we agree with respondent.

Section 215(a)[2] provides a deduction for amounts paid by a taxpayer to a former spouse if the former spouse is required to include these amounts in gross income under section 71. Under section 71(a)(1),[3] the former spouse's gross income includes periodic payments received from the taxpayer in discharge of a legal obligation which the divorce decree imposes on the taxpayer because of the marital or family relationship. Section 71(c)(1) provides that payments generally will not be treated as periodic if they are made to discharge a part of an obligation the principal sum of which is specified in the divorce decree. However, section 71(c)(2) provides that if, by the terms of the decree, the principal sum is or may be paid over a period ending more than 10 years from the date of the decree, then the installment payments shall generally be treated as periodic payments.[4]

## 1. *Principal Sum*

The divorce decree specified the items (and their amounts) that Clyde's payments to Betty were to cover. The divorce decree also stated that Clyde's payments were to "continue until the accounts are paid in full, or until further order." The

---

[2]SEC. 215. ALIMONY, ETC.., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[3]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[4]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

amounts set forth in the divorce decree totaled $18,939.09. The divorce decree did not set forth the total amount. The 1976 judgment entry noted that Clyde had paid $18,939.09, noted that this was the total of the "accounts * * * set forth in said judgment entry" (the divorce decree), and terminated the divorce decree's order that Clyde pay Betty the $125 per week. The components of the principal sum are set forth in the divorce decree so that the amount of the principal sum may be determined by addition. We conclude that the principal sum herein has been "specified in the decree," within the meaning of section 71(c)(1). *Warnack v. Commissioner*, 71 T.C. 541, 555 (1979); *Kent v. Commissioner*, 61 T.C. 133, 136 (1973), and cases cited therein.

In order for the payments to nevertheless qualify for periodic payment treatment under section 71(c)(2), the principal sum "is to be paid or may be paid over a period ending more than 10 years from the date of" the divorce decree. At the specified weekly rate, the principal sum herein would be paid in its entirety within 152 weeks. The divorce decree did not authorize Clyde to delay payments; it did not provide contingencies under which payments would be reduced, thereby lengthening the possible payout period. (See *Wallace v. Commissioner*, 485 F.2d 422, 426–427 (10th Cir. 1973), affg. *Young v. Commissioner*, 58 T.C. 629, 638–639 (1972).) In fact, the 1976 judgment entry shows that the principal sum was paid in its entirety within 3 years after the date of the divorce decree. We conclude that these payments do not qualify under the terms of section 71(c)(2) for periodic payment treatment.

Petitioners contend that the phrase "or until further order" in the divorce decree makes it impossible to calculate a principal sum, and also made it possible that Clyde's payments would have extended over a period more than 10 years. In support of their contention, petitioners cite *Salapatas v. Commissioner*, 446 F.2d 79 (7th Cir. 1971), affg. a Memorandum Opinion of this Court,[5] and *Wolfe v. Wolfe,* 46 Ohio St. 2d 399, 350 N.E.2d 413 (1976), arguing that the Common Pleas Court could have altered or discontinued Clyde's payments.

In *Salapatas*, a divorce decree had awarded a former wife

---

[5]T.C. Memo. 1969–230.

$20,000, in lieu of alimony and child support, to be paid at the rate of $50 per week. This obligation was to terminate if the former wife died before the full sum was paid, but the former husband was then to assume responsibility for support of their child. The Court concluded that, under section 1.71–1(d)(3), Income Tax Regs. (n. 9 *infra*), the payments were subject to one of the contingencies listed therein (subdivision (i)(*a*)) and were in the nature of alimony or an allowance for support, and, therefore, were periodic payments under section 71. Neither the Court of Appeals nor this Court considered the effect of any reservation of jurisdiction by the court that issued the divorce decree in *Salapatas. Salapatas*, then, is irrelevant to the proposition for which it is cited by petitioners.

In *Wolfe v. Wolfe, supra,* the trial court had held that the circumstances of the case before it justified termination of a former husband's obligation to pay his former wife "for her support and maintenance" $35,000 per year. The Court of Appeals reversed, finding "no reservation of jurisdiction in the trial court." The narrow holding of the Supreme Court of Ohio, in reversing the Court of Appeals, was—

> In summary, we hold, therefore, that where an alimony award is for support only, is for an indefinite amount, and where there is no property settlement, or if there is such a settlement, the support award is independent thereof, the jurisdiction of the court to modify will be implied in the decree irrespective that such support order is based upon an agreement of the parties. [350 N.E.2d at 426.]

In analyzing the situation, the Ohio Supreme Court concluded that the problem presented "requires us to reexamine the basis and method upon which alimony is awarded in this state." (350 N.E.2d at 416.) In the course of this analysis, the Ohio Supreme Court concluded as follows:

> Consistent with the great weight of authority, even though there is a merger of the contract into the decree, the decree is still not subject to modification if the alimony award is not solely for support but is in settlement of the property rights of the parties. * * * [350 N.E.2d at 425.]

So that he who runs may read, the Ohio Supreme Court stated the matter in its syllabus, as follows:

> 1. An alimony award which constitutes a division of the marital assets and

liabilities is not subject to modification under the continuing jurisdiction of the court. [350 N.E.2d at 414.][6]

The divorce decree, in ordering Clyde to pay Betty $125 per week, specified (1) that Betty was to use the money to pay certain listed debts and (2) that this arrangement was ordered "to insure that the property heretofore awarded defendant [Betty] shall be free and clear and that the debts on same be paid." As we see it, under *Wolfe v. Wolfe, supra,* this arrangement would be viewed by the Ohio courts as an "alimony award * * * in settlement of the property rights of the parties" (350 N.E.2d at 425) or "a division of the marital assets and liabilities" (350 N.E.2d at 414) and "is not subject to modification under the continuing jurisdiction of the court." (350 N.E.2d at 414.) This conclusion is supported by the decision of the Court of Appeals of Ohio, Erie County, in *Drossman v. Drossman,* 48 Ohio App. 2d 81, 355 N.E.2d 891 (1975), in which it was held that an alimony decree was not subject to modification as to certain payments which coincided in amount and term with obligations on an outstanding mortgage on realty awarded to the former wife.

Accordingly, we conclude that the phrase "or until further order" did not reserve to the Common Pleas Court any jurisdiction to modify that portion of the divorce decree dealing with property settlement, including the $125 weekly payments.[7] *Wolfe v. Wolfe, supra.* There being no jurisdiction to modify the divorce decree, there was no element of contingency making it impossible to calculate a principal sum or making it possible that Clyde's payments would have extended over a period more than 10 years. (See *Wallace v. Commissioner, supra.*)

## 2. *Support*

Petitioners argue that Clyde's payments to Betty are deductible because they were in the nature of support. We gather that this is an argument based on the concepts agreed to by this Court in *Cramer v. Commissioner,* 36 T.C. 1136 (1961), and embodied in section 1.71–1(d)(3), Income Tax Regs.[8] Respondent

---

[6] As to status of the syllabus by the court, in Ohio, see, e.g., *Baltimore & Ohio Railroad Co. v. Baillie,* 112 Ohio St. 567, 148 N.E. 233, 234 (1925).

[7] In its 1976 judgment entry, the Common Pleas Court merely concluded that Clyde had complied with the decree and made it clear that, under the divorce decree, the $125 weekly payments were not for support.

[8] See analysis in *Martin v. Commissioner,* 73 T.C. 255 (1979).

maintains the payments are installments in settlement of property rights and are not within the ambit of the above-noted regulations.

We agree with respondent.

We have concluded, *supra*, that the courts of Ohio would view Clyde's payments as a settlement of property rights, and not as provisions for Betty's support. We view the payments in the same light.

In applying section 1.71–1(d)(3), Income Tax Regs.,[9] we conclude that Clyde's payments do not qualify thereunder as periodic payments, because (1) they are not subject to any of the contingencies set forth in subdivision (i)(*a*), and (2) they are not "in the nature of alimony or an allowance for support" within the meaning of subdivision (i)(*b*).

Not all of Clyde's payments to Betty were used by her to pay off the items listed in the divorce decree. Petitioners maintain that this shows the payments were for support and not for settlement of property rights. The same argument was presented in *Land v. Commissioner*, 61 T.C. 675, 684 (1974), and *Jackson v. Commissioner*, 54 T.C. 125, 132 (1970). This argument was not found to be persuasive in *Land* or *Jackson;* it is equally nonpersuasive on the record in the instant case.

Finally, petitioners cite to us *Lambros v. Commissioner*, 459

---

[9] Sec. 1.71–1 Alimony and separate maintenance payments; income to wife or former wife.

(d) *Periodic and installment payments.*

*       *       *       *       *       *       *

(3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

(*a*) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(*b*) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether—

(*a*) The contingencies described in subdivision (i)(*a*) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(*b*) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(*a*) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(*c*) The total amount which will be paid may be calculated actuarially.

F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of this Court,[10] for the proposition that whether Clyde's payments to Betty are in the nature of support or represent a property settlement is a question of intent. We agree with the general proposition, but the record herein points us to the conclusion that the intent manifested in the divorce decree was that the payments are not in the nature of support.

On the one issue presented, we hold for respondent. Since the other adjustments in the notice of deficiency (regarding State and local tax deductions) have not been put in dispute,

*Decision will be entered for the respondent.*